Hearing Date and Time: (pending)
Objections due by: (pending)

Schuyler G. Carroll
Perkins Coie LLP
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 262-6900
Fax: (212) 977-1649
SCarroll@perkinscoie.com

*Attorneys for Stout Street Fund I, L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

In re:

    HUI JUN WANG,

                      Debtor.

------------------------------------- X

Chapter 13
Case No. 13-13827 (SHL)

Honorable Sean H. Lane

**MOTION FOR RELIEF FROM AUTOMATIC STAY *NUNC PRO TUNC*
TO ALLOW FORECLOSURE SALE OF REAL PROPERTY**

Stout Street Fund I, L.P. ("Stout"), by its attorneys, Perkins Coie LLP, moves pursuant to Sections 362(d)(1) and (2) of the Bankruptcy Code (the "Motion") and respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit 1, granting *nunc pro tunc* relief from the automatic stay so as to validate the foreclosure sale described herein. Stout respectfully submits as follows in support of its Motion:

*Preliminary Statement*

1. Approximately thirty (30) months prior to Debtor's bankruptcy petition, Stout filed a foreclosure action against 18 MS Realty, Inc. ("MS") in the Supreme Court of New York, County of Bronx, seeking a judgment of foreclosure with regard to certain commercial real

property owned by MS located at 2117 Clinton Avenue, Bronx, New York (the "Property"). Pursuant to the terms of the promissory note and mortgage executed by MS in favor of Stout with regard to the Property, the Debtor is listed as Guarantor of MS' payment obligations.

2. A Judgment of Foreclosure and Sale (the "Foreclosure Judgment") was entered in Stout's favor by the Hon. Maryann Brigantti-Hughes on May 8, 2013. Pursuant to the terms of the Foreclosure Judgment, Stout advertised the Property for sale in the New York Law Journal and the Bronx Free Press, with such sale to be held by court-appointed Referee on November 25, 2013 (the "Foreclosure Sale"). A buyer appeared at the Foreclosure Sale, and terms of sale were entered into by the parties. However, unbeknownst to Stout, The Debtor filed a voluntary petition for bankruptcy relief on November 25, 2013. The Debtor does not hold an ownership interest in the Property. In fact, Stout believes the Debtor's only interest is as a guarantor and in MS. Indeed, the loan documents signed by the Debtor indicate that the Debtor would not occupy the Property. However, in an abundance of caution, Stout seeks retroactive relief from the automatic stay with regard to the Property, so as to permit the Foreclosure Sale to be completed.

*Jurisdiction and Venue*

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding as that term is used in 28 U.S.C. § 157(b)(2), over which this Court has final adjudicatory authority. Venue is proper pursuant to 28 U.S.C. § 1409. The statutory predicate for the relief sought herein is found in Section 362(d) of the Bankruptcy Code, as complemented by Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001.

*Background*

4. On or about May 17, 2010, Stout, through its predecessor-in-interest Stout Street Funding, LLC ("Funding"), advanced the principal sum of $178,800.00 (the "Principal

Amount") to MS, for the purpose of acquiring the Property. (*Affidavit of Ken Glickstein in Support of Motion for Relief from Automatic Stay Nunc Pro Tunc to Allow Foreclosure Sale of Real Property* ("Glickstein Aff."), at ¶ 4.)

     5.    Funding advanced the Principal Amount pursuant to a Note and Mortgage executed in favor of Funding by MS, by which Note and Mortgage MS promised to repay the Principal Amount, with interest, by December 1, 2010 and pledged the Property as security for MS' repayment obligations under the Note. (Glickstein Aff., at ¶¶ 5–6.) True and correct copies of the Note and Mortgage, attached as Exhibits A and C to the Glickstein Aff. The Note and Mortgage were later assigned to Stout via the allonge and assignments attached as Exhibit B and D to the Glickstein Aff.

     6.    MS executed the Note and Mortgage through the signature of the Debtor, in his official capacity as President of MS. Additionally, the Debtor executed a personal Guaranty in favor of Funding, guaranteeing the Note obligations of MS. (Glickstein Aff. at ¶ 8.) A true and correct copy of the Guaranty is attached to the Glickstein Aff. as Exhibit E.

     7.    MS attested, through an Occupancy Affidavit executed by the Debtor on May 17, 2010 (the "Occupancy Affidavit"), that MS did not at that time occupy or intend to occupy or use the Property as a residence or home. (Glickstein Aff. at ¶ 7.) A true and correct copy of the Occupancy Affidavit is attached to the Glickstein Aff. as Exhibit F. The Bargain and Sale Deed conveying the Property to MS (the "Deed") lists only MS as an owner of the Property. A true and correct copy of the Deed is attached to the Glickstein Aff. as Exhibit G.

     8.    MS failed to repay its obligations in full by December 1, 2010, and the Note and Mortgage became in default as a result. (Glickstein Aff., at ¶ 9.)

     9.    On May 2, 2011, Stout commenced a foreclosure action against MS and the Debtor

in the Supreme Court of the State of New York, Bronx County, based on this default. By order of the court, Felice B. Barry, Esq. was appointed Referee (the "Referee")[1] and submitted an Oath and Report setting forth that, as of October 31, 2012, the sum of $239,657.49 was owed to Stout on account of the Note (the "Principal Amount").

    10. On May 8, 2013, the court approved the Referee's findings and entered the Foreclosure Judgment (a copy of which is attached to the Glickstein Aff. as Exhibit J) in favor of Stout. (Glickstein Aff. at ¶ 9.) The Foreclosure Judgment authorizes the Referee to conduct a foreclosure sale of the Property, such sale to be advertised in the New York Law Journal and the Bronx Free Press.

    11. On November 25, 2013, the Referee conducted the Foreclosure Sale, such Foreclosure Sale having been advertised according to the requirements of the Foreclosure Judgment. (Glickstein Aff., at ¶ 11.) At the Foreclosure Sale, the Referee calculated the amount due to Stout pursuant to the Foreclosure Judgment to be $304,824.16 (the "Referee's Calculation"), which amount would take into account the total sum of all tax obligations and other administrative fees owed on account of the Foreclosure Sale. (Glickstein Aff. at ¶ 10.) A copy of the Referee's Calculation is attached to the Glickstein Aff. as Exhibit K. Upon review of the business records held by Stout, the Referee's Calculation depicts an accurate reflection of the amount required to be produced by the Foreclosure Sale in order to fully satisfy all of MS' obligations under the Note as of the Petition Date, taking into account the limitations imposed by the Foreclosure Judgment. (Glickstein Aff. at ¶ 10.)

    12. Nasser Zar, Inc. appeared as a bidder at the Foreclosure Sale and was approved by the Referee as the successful buyer (the "Buyer"), with a final agreed purchase price of $290,000. (Glickstein Aff. at ¶ 11.) True and correct copies of the Memorandum of Sale and

---

[1] Between the Foreclosure Judgment and the Foreclosure Sale, Leonard Charles Aloi was substituted as Referee.

LEGAL28604038.4

Terms of Sale prepared by Referee and signed by Nasser Zar, Inc. as Buyer are attached to the Glickstein Aff. as Exhibits H and I, respectively.

13.  Unbeknownst to Stout, on November 25, 2013 the Debtor filed his petition for Chapter 13 relief.  (Glickstein Aff. at ¶ 12.)  Because the Debtor is the Guarantor under the Note and Mortgage, and because New York judicial foreclosure process make a guarantor a party to a foreclosure proceeding, the Debtor likely will assent that the Sale was stayed by operation of Section 362 of the Bankruptcy Code.  The Court should retroactively grant Stout relief from the automatic stay to proceed with the Foreclosure Sale and approve the terms agreed-upon by the Buyer and Referee, for "cause" under Section 362(d)(1), and, under Section 362(d)(2), because the Debtor has no equity in the Property -- and in fact has no interest at all in the Property -- and the Property is not needed for an effective reorganization of the Debtor.

### *Relief Requested*

14.  Stout seeks an Order of this Court granting retroactive annulment of the automatic stay pursuant to Section 362(d) of the Bankruptcy Code and approving the terms of the Foreclosure Sale to be completed.

### *Basis for Relief Requested*

15.  Section 362(a)(1) of the Bankruptcy Code stays the "continuation . . . of a . . . proceeding against the debtor" that was initiated prepetition.   Some bankruptcy courts have held that a foreclosure sale is a continuation of judicial process against a guarantor of the subject property, and therefore a violation of the automatic stay, even where the guarantor owns no equity in the property.  *See, e.g., In re Ebadi*, 448 B.R. 308, 316 (Bankr. E.D.N.Y. 2011).

16.  Assuming *arguendo* that the Foreclosure Sale is stayed, the Court can and should allow the Foreclosure Sale to proceed by issuing "an order retroactively validating the action."

*In re WorldCom, Inc.*, 325 B.R. 511, 519 (Bankr. S.D.N.Y. 2005). As the court in *WorldCom* held, courts assess a variety of factors in determining whether to grant *nunc pro tunc* relief from the automatic stay, including:

1) if the violating creditor had actual or constructive knowledge of the bankruptcy filing;
2) if the debtor has acted in bad faith;
3) if the debtor has equity in the property;
4) if the property was necessary for an effective reorganization;
5) if grounds for stay relief existed and a lift-stay order would have likely issued if the creditor had sought one before the violation;
6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and
7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re WorldCom*, 448 B.R. at 319.

17. The first two *WorldCom* factors unquestionably point in favor of awarding retroactive relief in this case. The Glickstein Aff. affirms that Stout had neither actual nor constructive knowledge of the Debtor's bankruptcy petition. (Glickstein Aff. at ¶ 11.) Furthermore, the Debtor's bankruptcy case exhibits classic hallmarks of a bad faith filing meant only to delay judicial process — the Debtor filed for relief on the date of the Foreclosure Sale, and did not even notify Stout until after the Foreclosure Sale was conducted. The Debtor failed to file a plethora of required documents, as identified by the *Deficiency Notice* issued by the Court on the petition date. [Dkt. No. 4.] Bankruptcy courts in similar situations have awarded *nunc pro tunc* relief to creditors whose otherwise-legitimate foreclosure sales have been jeopardized by last-minute bankruptcy filings. *See NKL Enters., LLC v. Oyster Bay Mgmt. Co., LLC*, No. 12-CV-5091 (ADS), 2013 WL 1775051 (E.D.N.Y. April 25, 2013) (dismissing appeal of Bankruptcy Court's grant of *nunc pro tunc* stay relief, where debtor had no equity in the

property and bankruptcy filing was viewed as a delay tactic, even though foreclosing creditor had knowledge of bankruptcy filing at the time of the foreclosure sale).[2]

18. The other *WorldCom* factors also weigh heavily in Stout's favor. The Debtor has not filed a schedule listing his real property interests, but based on the Mortgage and Note the Debtor does not hold any ownership interest in the Property — the Property is owned entirely by MS. Furthermore, the Deed lists only MS as an owner, and the Occupancy Affidavit reflects that the Property was purchased as an investment property. Therefore, the Debtor does not own any equity in the Property, and the Property cannot be said to be necessary for any reorganizational purpose of the Debtor. Based on the Referee's Calculation, the Property is substantially underwater; in order to return any amount from the proceeds of the Foreclosure Sale to MS, the Foreclosure Sale was required to bring in roughly $15,000 more than buyers were, in fact, willing to pay for the Property at the Foreclosure Sale. Adequate grounds for stay relief thus existed prior to the Foreclosure Sale, and Stout would have been entitled to prevail on a motion to lift the automatic stay had Stout been informed of the bankruptcy filing prior to the Foreclosure Sale. Finally the failure to grant the relief sought in the Motion will cause unnecessary detriment to Stout, in that Stout risks losing a buyer for the Property and will be required to expend another round of fees and costs associated with conducting a second foreclosure sale in addition to continuing accrued interest.

19. Cause exists in this case to award Stout *nunc pro tunc* relief from the automatic stay, as the Debtor's bankruptcy petition was filed only for the purpose of delaying the Foreclosure Sale, the Debtor lacks any equity in the Property, and relief from the automatic stay

---

[2] On appeal, the District Court cited to the "analogous factual scenario" in *In re Plagakis*, No. 03 Civ. 0728, 2004 WL 203090, at *5 (E.D.N.Y. Jan. 27, 2004), in which case the court affirmed a grant of a *nunc pro tunc* dismissal so as to "validate the mortgage foreclosure sale," where the debtor had "filed a skeletal petition minutes before" the sale was held. *NKL Enters., LLC*, 2013 WL 1775051 at *6.

would have been proper had Stout been informed of Debtor's bankruptcy filing prior to the Foreclosure Sale and been in a position to request prospective stay relief.

### *Conclusion*

WHEREFORE, the Debtor respectfully requests the Court issue an Order, substantially in the form attached as <u>Exhibit 1</u>: (1) annulling the automatic stay *nunc pro tunc* to the date and time the Debtor's bankruptcy petition was filed so as to validate the Foreclosure Sale; and (2) granting Debtor such other, further, and different relief as this Court deems just and proper.

Dated: New York, New York.  
       December 12, 2013

PERKINS COIE LLP  
*Attorneys for Stout Street Fund I, L.P.*

By: */s/ Schuyler G. Carroll*

Schuyler G. Carroll  
30 Rockefeller Center, 22nd Floor  
New York, NY  10112-0085  
212.262.6900

LEGAL28604038.4