Hui Jun Wang, Pro-Se Debtor
2117 Clinton Avenue,
Bronx, New York 10461

Hearing Date and Time (Pending)
Objection Filed on December 27ᵗʰ 2013
Reply Due By December 30ᵗʰ 2014

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:

|  |  |
|---|---|
| HUI JUN WANG, | OBJECTION with OPPOSITION And WRITTEN DEMANDS FOR DISCOVERY AND DENIAL OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY PENDING THE COMPLETION OF DISCOVERY AND DEMANDS AND THE VALIDATION OF ALL DEBTS, LOANS AND ECT |
| Debtor | Chapter 13 Case No# 13-13827 (SHL) Honorable Sean H. Lane, Justice |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X


I, Hui Jun Wang, appearing pro-se, being duly sworn, depose and state under the penalties of perjury and upon information and belief make this Objections and Opposition to the motion stating the following;


1. That I am the debtor herein appearing pro-se without proper English

language and in need of an interpreter during any future hearings, and that I

am over the age of 21 years old, I am familiar with the facts and circumstances

surrounding these proceedings and I have personal knowledge of the facts

stated herein.

2013 DEC 27 P 3:56
U.S. BANKRUPTCY COURT
FILED

2. That I make this **OBJECTION** with **OPPOSITION** to the motion for relief from the automatic stay *nunc pro tunc* upon the following grounds; to wit, (a) that the creditor lacks legal standing to demand such relief absent a showing of evidence that it owned the note and mortgage, and (b) that absent evidence that process was legally and personally served upon all necessary defendants in the foreclosure action and such automatic stay must remain in place on the basis of the operation of law, and (c) that proof of claims must be submitted by the creditor in a showing that it has '...legal standing to challenge the stay...', and to foreclosure upon the mortgage of the property located at 2117 Clinton Avenue, Bronx, New York, and (d) that any and all sub-leasing tenants occupy such place or space within '...the premises being fore- closured...', should enjoy the legal and statutory benefit of the stay pending the outcome of related litigations in state supreme court, and (e) there is a conflict of interest as to the person who verified the complaint, and (f) plaintiff had failed to state a cause of action for which relief can be granted in that the assignment of mortgage was defective by way of plaintiff's failure to have a certificate of conformity and power of attorney on record attached hereto and that plaintiff lack subject matter jurisdiction over the defendant since the assignment of mortgage is statutorily defective, lacks of power of attorney, the certificate of conformity,

and (g) predatory lending is an issue that this court must now determine as a factor in any defaulting mortgage.

3. A judgment of foreclosure and sale was entered on May 8th 2013 by illegal and unconstitutional means along with predatory lending and deception upon the lending parties.

4. The process server did not effectively and personally serve summons and complaint upon the debtor's residence and others familiar to the foreclosure proceedings held in the Bronx Supreme Court.

5. Indeed, the debtor is a tenant and guarantor to the corporation but in all fairness, the foreclosure proceedings was commenced in violation of the state laws and in absent of any settlement conference (mandatory by case laws and CPLR 3408.)

6. The much-publicized subprime mortgage crisis, the impact of which would be difficult to exaggerate, devastated the financial markets, domestically and globally (see Jenny Anderson & Heather Timmons, Why a U.S. Subprime Mortgage Crisis Is Felt Around the World, NY Times, Aug. 31, 2007).

7.   A primary component of this phenomenon was an explosion in mortgage
     foreclosures in this country, beginning in 2007 (see Hon. Mark C. Dillon,
     The Newly-Enacted CPLR 3408 for Easing the Mortgage Foreclosure Crisis:
     Very Good Steps, but not Legislatively Perfect, 30 Pace L Rev 855, 855-856
     [2010]; Nelson D. Schwartz, Can the Mortgage Crisis Swallow a Town?, NY
     Times, Sept. 2, 2007).

8.   In an effort to address the mortgage foreclosure crisis in New York, the
     Legislature passed the Subprime Residential Loan and Foreclosure Laws (see
     L 2008, ch 472; see also Hon. Mark C. Dillon, 30 Pace L Rev at 856).

9.   This law enacted, among other statutes, CPLR 3408, effective on August 5,
     2008 (see L 2008, ch 472, § 3). CPLR 3408 provides for mandatory
     settlement conferences in certain residential foreclosure actions (see former
     CPLR 3408). In 2009, shortly after the passage of the Subprime Residential
     Loan and Foreclosure Laws, the Legislature amended a number of the
     recently enacted statutes, including CPLR 3408 (see L 2009, ch 507).

10.  The purposes of the amendments were to allow more homeowners at risk of
     foreclosure to benefit from consumer protection laws and opportunities to
     prevent foreclosure; to establish certain requirements for plaintiffs in

foreclosure actions obligating them to maintain the subject properties; to

establish protections for tenants living in foreclosed properties; and to

strengthen consumer protections aimed at defeating "rescue scams"

(Governor's Mem, Bill Jacket, L 2009, ch 507, at 5).

11. The 2009 amendments include a provision requiring that "[b]oth the plaintiff

and defendant shall negotiate in good faith to reach a mutually agreeable

resolution, including a loan modification, if possible" (CPLR 3408[f]). While

CPLR 3408(f) requires the parties at a settlement conference to negotiate in

good faith, that section "does not set forth any specific remedy for a party's

failure" to do so (Hon. Mark C. Dillon, 30 Pace L Rev at 875).

12. In the absence of specific statutes and rules to establish the consequences for

a party's failure to comply with the good-faith obligation imposed by CPLR

3408(f), the Supreme Court here fashioned its own remedy.

13. While we agree with the Supreme Court's finding that the plaintiff lender

failed to negotiate in good faith, for the reasons which follow, we conclude

that the remedy employed by the court, which compels the plaintiff to modify

its loan agreement, cannot stand.

14. Therefore, because of the due process violation of the lack of a statutory and mandatory settlement conference, this court must deny the motion for relief and stay the matter pending the lower state court decision on the newly discovered evidence motion filed by the debtor.

15. Secondly, this court should only grant relief if '...it believes that the debtor has acted in a matter that would show abuse of the judicial systems..', by perpetual filings of chapter 13's.

16. In this case, the motion must also be denied because there is not a showing that the foreclosure and the commencement were properly served upon all necessary parties with proper address.

17. The motion outline allegations without any supporting affidavits swearing to those allegations in the moving papers by counsel Schuyler G.Carroll or its law firm.

18. Moreover, there is no absolute swearing of the moving papers for this court to gauge as being the true but only allegations and fiction on part of the attorneys for Stout Street Fund and it associates.

19. Section 1746 declarations are prosecutable as perjury, even though the law did not require the original declaration under penalty of perjury, to be sworn. **United States v. Gomez-Vigil,** 929 F.2d 254, 257 (6th Cir. 1991).

20. These declarations may be scrutinized by the courts. For example, the United States Court of Appeals for the Ninth Circuit overturned a section 1623(c) conviction because one witness statement at issue was not under oath, but was taken under section 1746. **United States v. Jaramillo,** 69 F.3d 388, 390-91 (9th Cir. 1995).

21. In the interest of justice and fairness, this court must reject any and all moving papers filed and submitted before this court by counsel on the basis that no penalty of interest or sworn oath by its author has been made or attested.

22. The debtor further argue that the motion must be rejected on its face because it outlines twenty (20) paragraphs of unsworn facts and allegations absent the proper swearing for it to be induced as evidence, . See, CPLR 2106; **Cwiekala v. Siddon,** 267 A.D.2d 193 (2nd Dept. 1999) **Moore v. Tappen,** 242 A.D.2d 526 (2nd Dept. 1997); see, also, **Offman v. Singh,** 27 A.D.3d 284 (1st Dept. 2006)[ ruled that a physician's statement that does not contain the language

"affirmed ... to be true under the penalties of perjury" fails to comply with
CPLR 2106.

23. As regards to the foreclosure itself, this court must also either deny the motion
in its entirety and or permit a stay pending the discovery of facts and
circumstances and or allow for the pending litigation in state supreme court to
finalize in this appellate form and decision.

24. This petition for a bankruptcy is legitimate and must be stayed for the
purpose to '...address all unchallenged issues...', and to permit the debtor and
its cohorts to enjoy the fundamental and constitutional right to proper due
process in court.

25. The foreclosure action in the State Supreme Court was commenced absent
evidence of proof of ownership of both the note and mortgage see **Kluge v.
Fugazy,** 145 A. D. 2d 537 [1988], (see exhibit C).

26. The foreclosure action and proceedings were commenced in violation of
proper serve upon all '....necessary parties and defendants....', RPAPL and
also CPLR 308(2).

27. In the matter of **Carper v. Nussbaum**, 36 A.D. 3d 176, 181 [2ⁿᵈ Dep't. 2006],

the Court held that "...standing to sue requires an interest in the claim as issue

in the lawsuit that the law will recognize as a sufficient predicate for

determining the issue at the litigant's request...if a plaintiff lacks standing to

sue, the plaintiff may not proceed in the action, [quoting, **Stark v. Goldberg**,

297 A.D. 203 [1ˢᵗ Dep't. 2002].

28. However, the current foreclosure action violated defendant's constitutional

rights because plaintiff is not the proper party to bring this action against

defendant in foreclosure, **see Exhibit-A (copy of judgment of foreclosure).**

29. These unsworn, unverified non-conformity documents were relied upon for

this court to issue a judgment in violation of defendant's constitutional rights

and the due process right by law. This particular deposition of plaintiff was not

officially sworn to under an oath or penalty against penal interest by the

undersigned, nor was it notarized on its face.

30. That defendant further denies having any such knowledge or information to

form a belief as to the entire action and that plaintiff is not the proper or legal

owner of said property in question and that there has not been a sale of the

property as of the receipt of this answer, <u>Katz v. East-Ville Realty Co.</u>, 249 A.D. 2d 242 [ 1ˢᵗ Dep't. 1998 ] in which the court held {"...that plaintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact..."}.

31. The Court, in <u>Campaign v. Barba</u>, 23 A.D. 3d 327 [2ⁿᵈ Dep't. 2005], held that " ...to establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and the mortgage note, ownership of the mortgage, and the defendant's default in payment [ citing, <u>Household Finance Realty Corp. of New York v. Wynn,</u> 19 A.D. 3d 545 [ 2ⁿᵈ Dep't. 2005], <u>Sears Mortgage Corp. v. Yahhobi,</u> 19 A.D. 3d 402 [2ⁿᵈ Dep't. 2005, also see <u>Ocwen Federal Bank FSB v. Miller,</u> 18 A.D. 3d 527 [2ⁿᵈ Dep't. 2005].

32. Secondly, that plaintiff was not the proper and legal owner of the premises at issue and that there was an assignment which was not subjected to the requirements of Section 275 (a) of Real Property Law and that the commencement of this action was unconstitutional under the law.

33. Jurisdiction not only surrounds improper service or the appropriate personal

delivery of process, but it also include standing for which the moving party

must have prior to initiating an action, see **Campaign v. Barba,** 23 A.D. 3d

327 [ 2nd Dep't 2005], in which the court held '.....that to establish a prima

facie case in an action to foreclose a mortgage, the plaintiff must establish the

existence of the mortgage and the mortgage note { ownership of the

mortgage}, and the defendant's default in payment.


34. The Appellate Division, Second Department in **Kluge v. Fugazy,** 145 A.D. 2d

537, 538 [2nd Dep't. 1988], held that '..a foreclosure of a mortgage may not

be brought by one who has no title to it and absent transfer of the debt, the

assignment of mortgage is a nullity, {citing, **Katz v. East-Ville Realty Co.,** 249

A.D. 2d 243 [ 1st Dep't. 1998].


35. There are two fundamental issues before this court that qualify for a hearing,

i.e. [1] the matter of personal delivery of process upon the defendant in which

plaintiff had failed to comply with **Macchia v. Russo,** 67 NY 2d 592, 594, see

**Dorfman v. Leidner,** 76 NY 2d 956, 958. CPLR 308 requires that service be

attempted by personal delivery of the summons and complaint to the person

to be served [subd. (1)] or by usual place of abode [subd. (2)]. In this case, the

plaintiff had claim that its' process server did comply with the due diligence

clause of section 308 (1) and 308 (2), however, defendant argue in rebuttal that no such process was ever personally delivered to her relating to these proceedings before this court.

36. In addition, there is also defendant has issue that the David Kaplan has signed as Sr. Vice President of Braddock Financial Corp., the manager of Stout Street Funding, LLC and the General Parnter of Stour Street Funding ILP that Sr. David Kaplan is an manager of both assignor, Stout Street Funding, LLC and the assignee, Stout Street Funding, ILC, this would create a conflict of interest and render the May 17, 2010 assignment viod. See Cite case attached hereto as exhibit E;  **Deutsche Bank National Trust Company** v. **Gustavo Castellanos Ind.#22375/06** in Kings County Supreme Court, page 4).

37. The affidavit was never accompanied by an affidavit of Merit and a Certificate of conformity, and therefore, cannot be provided as evidence in this case, **Daimler Chrysler Services North America LLC** v. **Tammaro, 14** Misc... 3d 128, [App. Term, 2d Dept], **Bath Medical Supply, Inc.** v. **Allstate Indemnity Co.,** 13 Misc. 3d 142.  Moreover, the affidavit of testimony, absent a certificate of conformity and power of attorney along with corporate resolution documents affixed thereon, Terrence Dewyse is not qualified to testify from the business records of the plaintiff.  **Lodato** v. **Greyhawk North America, LLC,** 39 A.D. 3d 494, 495 [2nd Dept'. 2007].

38. The court note that the affidavit provided by the plaintiff were both signed and notarized outside of the state of New York and were not accompanied by the required certificates of conformity, See CPLR 2309[c], see also PRA, LLC v. Emilio Gonzalez 54 AD 3d 917.   The court denied plaintiff's summary judgment motion that plaintiff failed to establish its entitlement to judgment as matter of law on issue of whether right to collect alleged debt was assigned to it.

39. Again, this affidavit of plaintiff does not conform with New York State filing procedures because it lacked a certificate of conformity which warrant that both the order of reference and judgment of foreclosure and sale be vacated with prejudice and the complaint dismissed in its entirety.

40. Predatory lending against the defendant herein warrants that this court must stay the deed and title transfer and schedule a hearing on the issue as to whether fraud and predatory lending are issues that warrant the relief herein. Predatory loan are characterized by excessively high interest rates or fees, and abusive or unnecessary provisions that do no benefit the borrower, including balloon payments or single-premium credit life insurance, large prepayment penalties, and underwriting the ignores a borrower's repayment ability.

Today, predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers. Negative amortization loans are structured so that interest is not amortized over the life of the loan and the monthly payment is insufficient to pay off the accrued interest. The principle balance therefore increase each month and at the end of the loan term, the borrower may own more than he or she originally borrowed in stated amount. Aside from the loan itself, typically offered at very high interest rates, the loan terms often include inflated and padded cost, such as excessive closing or appraisal charges or fictitious appraisal reports, just as in this case, high origination and other administrative fees and exorbitant prepayment penalties that trap lower income borrowers into the sub-prime market. The issue before this court is predatory lending and illegal bank fraud and along with others unknown only by the HUD-1 statements, and post closing in which plaintiff was not made aware of until the pendency of the foreclosure action commenced by plaintiff herein.

41. The defendant herein demands for a declaratory judgment pursuant to 1921 RPAPL (2) in order to be granted the relief of an order that declare the mortgage issued by those named herein plaintiff or its trustee be deemed to be predatory lending and to discharge the loans in its totality and to include

any and all foreclosure proceedings orders and judgment made in connection with both the foreclosure action.

42. The present foreclosure petition is a legitimate one and this court must deny the relief sought by counsel on the basis that (a) this debtor has colorable claims and issues that were never addressed in lower court and (b) that the stay of the foreclosure sale should be enjoyed while the present litigation is pending, and (c) that the debtor has raised significant and constitutional issues for which the relief sought by counsel should be denied, and (d) that because of the pendency and overwhelming violations by the creditor warrant that the automatic stay must remain in place for a period not to exceeding prejudicial hardship of the creditor (90 days stay) for which all lower court litigations should be resolved.

43. That the debtor cannot at this point respond to any of the other allegations in the motion since such moving papers are unsworn, unnoticed by a commissioner of deeds or notary public and that such oath has not been taken for the purpose of direct evidence or the submission thereof rules of evidence, LR 801 Hearsay.

**Wherefore,** your debtor prays for this court to deny the motion for relief

from the automatic stay and to permit the STAY for a period so to allow the debtor

to address all claims for 90 days and for such other and further relief this court may

deem just and proper.


Hoi Jun Wang  Pro-se
Debtor


Subscribed and Sworn to before
this ___27___ day of _Dec_ 201_7_

Notary Public

WING  TAK  CHEUNG
NOTARY PUBLIC, State of New York
NO. 01CH6148924
Qualified in Queens County
Commission Expires July 3rd, 2014

# EXHIBIT A

FILED May 20 2013 Bronx County Clerk



# COMMERCIAL MORTGAGE FORECLOSURE

AN IAS PART 15. OF
At the Supreme Court of the
State of New York, held in and
for the County of Bronx, Room
217 at the Bronx County
Courthouse,    851    Grand
Concourse, Bronx, New York
10451 on the 8 day of
April , 2013

MAY

**PRESENT:**

HON. MARYANN BRIGANTTI-HUGHES, J.S.C
JUSTICE.

ORIGINAL

-----------------------------------------------------------X

STOUT STREET FUND I, LP

       Plaintiffs,

 -against-

18 MS REALTY, INC.; HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

      Defendants.

-----------------------------------------------------------X

Index No.: 380471/11

**JUDGMENT OF
FORECLOSURE
AND SALE** RECEIVED BY:

MAY 16 2013

Judgment Department

On the reading of the following, all now duly filed in the office of the Clerk of Bronx
County and on all the proceedings thereon particularly the:

Summons and Verified Complaint filed on May 2, 2011 and on all the affidavits of
service, showing that each and all of the defendants herein have been personally served with said
summons and complaint, or have voluntarily appeared herein by their respective attorneys; and
upon the

Notice of Pendency of Action filed on May 2, 2011; and upon the

Order of Reference and Amendment dated October 4, 2011 appointing a referee to compute the

Page 4

Exhibit A

FILED May 20 2013 Bronx County Clerk

amount due the plaintiff upon the bond (note) and mortgage set forth in the verified complaint and to examine and report whether or not the mortgaged premises can be sold in parcels; and upon the

Order Appointing Substitute Referee dated September 19, 2012 appointing a substitute referee to compute the amount due the plaintiff upon the bond (note) and mortgage set forth in the verified complaint and to examine and report whether or not the mortgaged premises can be sold in parcels; and upon the

Referee's Oath and Report of Felice B. Barry, Esq., dated November 27, 2012 in which it appears that the sum of $239,657.49 was due thereon as of October 31, 2012; and that the mortgaged premises cannot be sold in parcels without material injury to the parties interested; and that the whole amount secured by said bond (note) has become due; and upon the

Affirmations of Regularity each dated December 10, 2012 of Harry Zubli, Esq., attorney for plaintiff, with exhibits annexed hereto, proving that more than thirty days had elapsed since such service upon said defendants was completed and since said defendants appeared, as aforesaid, and that none of the defendants had served an answer to said verified complaint, moved with respect thereto, and that no necessary defendant is an infant, incompetent, absentee or in the military; and that said defendants are in default,

NOW, on motion of Harry Zubli, Esq., plaintiff's attorneys it is

ORDERED that the plaintiff's motion is hereby granted without opposition, and it is further

ORDERED, ADJUDGED AND DECREED, that the said report of Felice B. Barry, Esq., dated [ReportDate], is in all respects ratified and confirmed, and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged premises described in

FILED May 20 2013 Bronx County Clerk

the complaint in this action, as hereinafter set forth, be sold at public auction in one parcel on a ANY

Monday, EXCEPT HOLIDAYS at 2:00 P.M. at the Supreme Court of the State of New York, County of New Bronx,

Room 600, 851 Grand Concourse, Bronx, New York 10451, by Felice B. Barry, Esq., who is

hereby appointed Referee for that purpose. That said Referee give public notice of the time and

place of sale, according to law and the course and practice of this Court, by publishing notice of

sale in the New York Law Journal AND BX Free Press; that the plaintiff or any

other party to this action may become the purchaser or purchasers at such sale; that said Referee

execute to the purchaser or purchasers on such sale a deed of the premises sold; that said Referee

on receiving the proceeds of sale forthwith pay therefrom the taxes, assessments and water and

sewer rents which are, or may become liens on the premises at the time of sale and any such

payments shall be allowed to the plaintiff and applied by said referee upon the amounts due to

the plaintiff as specified below in item marked "THIRD". That said referee then deposit the

amount received at sale in Chase Bank _____ ("Depository")

and shall thereafter make the following payments:

First: The statutory fees of said referee, in the amount of $500.00.

Second: Expenses of sale and advertising expenses as shown on the bill(s) presented and

certified by the Referee to be correct. Duplicate receipts shall be annexed to the Report of Sale.

Third: Said Referee shall also pay to the plaintiff or its attorneys, the sum of $239,657.49

together with interest CONTRACTUAL at the rate set forth in the note and mortgage from the date specified in the

referee's report, THE DATE THE INTEREST WAS CALCULATED TO WITHIN SAID REPORT, TO THE DATE OF ENTRY OF together with legal interest from the date of entry hereof, together with advances

THIS JUDGMENT, WITH LEGAL INTEREST THEREAFTER. from the date specified in said report, plus the sum of $ 145 00 adjudged to the

plaintiff for costs and disbursements in this action as taxed by the Clerk of the Court with interest

thereon from the date of entry hereof, together with an additional allowance of

Page 6

FILED May 20 2013 Bronx County Clerk

$300. ×× /100 _____ hereby awarded to plaintiff in addition to costs and disbursements with interest thereon from the date of entry hereof, or so much as the purchase money of the mortgaged premises will pay of the same. The Referee shall take a receipt therefor, and file it with the referee's report of sale.

*J.S.C.*

And said Referee shall pay to the plaintiff a reasonable sum for preservation of the property upon presentation of receipts for such expenditures to said referee.

And said Referee shall pay to plaintiff an attorney's fee ~~as authorized by the said mortgage~~ in the amount of $ *#4,500.00*

Fourth: If such Referee intends to apply for a further allowance for fees, ~~the Referee may~~ *AN APPLICATION SHALL BE MADE TO THE Court THEREFOR UPON DUE NOTICE TO THOSE PARTIES ENTITLED THERETO.* ~~leave upon deposit such amount as will cover such additional allowance to await the further order of this Court thereon after application duly made~~.

*J.S.C.*

Fifth: That in case the plaintiff be purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchaser at said sale and the terms of sale under this Judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with the said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed or deeds of the premises sold upon the payment to said Referee of the amounts specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments and water and sewer rents, and interest or penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing the payment thereof that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff, for preservation of the property, Referee fees, expenses of sale, and taxes, assessments and water and sewer rents shall be allowed to the plaintiff and applied by said Referee upon the

FILED May 20 2013 Bronx County Clerk

amounts due to the plaintiff as specified above in item marked "THIRD"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to said Referee, upon delivery to it of said Referee's deed, the amount of surplus; that said Referee on receiving said several amounts from plaintiff shall forthwith pay therefrom said taxes, assessments, water and sewer rents and interest or penalties thereon, unless the same have already been paid, and shall then deposit the balance in said Depository.

Sixth: That said Referee take the receipt of the plaintiff or its attorneys for the amounts paid as herein before directed in item marked "THIRD", and file it with the referee's report of sale; that said referee deposit the surplus moneys, if any, with the Bronx County Clerk within five days after the same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on the order of the Court, signed by a Justice of the Court; that the said Referee make a report of such sale and file it with the ~~Clerk of Bronx County~~ Bronx County Clerk within thirty days of completing the sale and executing a proper conveyance to the purchaser; and that the purchaser or purchasers at such sale be let into possession on production of the Referee's deed or deeds; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the proceeds of said sale be insufficient to pay the amount so reported due the plaintiff, with the expenses of sale, interest, cost and allowance, as aforesaid, the said referee shall specify the amount of such deficiency in the referee's report of sale; that the plaintiff recover of the defendants 18 MS REALTY, INC. and HUI JUN WANG, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a

FILED May 20 2013 Bronx County Clerk

deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount is determined and awarded by an order of this Court as provided for in said section; and that the purchaser or purchasers at such sale be let into possession of the premises sold to them on production of the referees deed or deeds of said premises; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming through or under them, or any or either of them, after the filing of such notice of pendency of this action, are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to any state of facts that an inspection of the premises would disclose, any state of facts that an accurate survey of the premises would show, an covenants, restrictions, declarations, reservations, easements, right of way and public utility agreements of record, and building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same, any rights of tenants or persons in possession of the subject premises, prior liens of record, any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings Law, and any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale. Risk of loss shall not pass to purchaser until closing of title and it is further

ORDERED, ADJUDGED AND DECREED, that in absence of the Referee, the Court may designate a Substitute Referee forthwith; and it is further

J.S.C.

Page 9

FILED May 20 2013 Bronx County Clerk

**ORDERED, ADJUDGED AND DECREED,** that the Referee appointed herein is subject to the requirements of Rule 36.2(c) of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

**ORDERED, ADJUDGED AND DECREED,** that a copy of this Judgment with Notice of Entry shall be served upon the designated Referee, the owner of the equity redemption as of the date of this Order, any tenants named in this action and any other party entitled to notice

Said premises commonly known as: 2117 Clinton Avenue, Bronx, New York 10457 (Block: 3096, Lot(s): 63)

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the Ex-Parte Office at least ten (10) days prior to the scheduled sale date.

ENTER    5|9|13

JUSTICE, SUPREME COURT
Hon. Mary Ann Brigantti-Hughes

LUIS M. DIAZ
COUNTY CLERK
MAY 20 2013

Page 10

FILED  May 20 2013 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------X

STOUT STREET FUND I, LP

                            Plaintiffs,

    -against-

18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

                         Defendants.
-------------------------------------------------------------------X

Index No.: 380471/11

**COSTS OF PLAINTIFF**

STATE OF NEW YORK
COUNTY OF NASSAU   ss.:

    The undersigned, an attorney admitted to practice in the courts of this state, affirms: that he is the attorney of record for the Plaintiff in the above entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount; and that copies of documents or papers as charged herein were actually and necessarily obtained for us.

    The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated:    December 10, 2012
           Great Neck, New York

                        Harry Zubli Esq.
                        Attorney for Plaintiff
                        1010 Northern Blvd., Suite 310
                        Great Neck NY 11021
                        Telephone: (516) 487-5777
                        Facsimile: (516) 487-4834

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------------X

STOUT STREET FUND I, LP

Plaintiffs,

-against-

18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

Defendants.
-------------------------------------------------------------------------X

Index No.: 380471/11

**BILL OF
PLAINTIFF'S COSTS**

I hereby certify that I have
adjusted this bill of costs at
$ 1465.00
MAY 20 2013
Date                     Clerk
Luis M. Diaz

<u>COSTS</u>

| | |
|---|---|
| Costs before Note of Issue-CPLR §8201(1) | $200.00 |
| Allowance by Statute – CPLR §8302(a) (b) | $150.00 |
|    First $200.00 @ 10%   $20.00 | |
|    Next $800.00 @ 5%   $40.00 | |
|    Next $2,000.00 @ 2%   $40.00 | |
|    Next $5,000.00 @ 1%   $50.00 | |
| Additional Allowance – CPLR §8302(d) | $50.00 |

<u>FEES & DISBURSEMENTS</u>

| | |
|---|---|
| Fee for Index Number – CPLR §8018(a) | $210.00 |
| Clerk's fee for filing Notice of Pendency CPLR §8018(a), §8021(a)(10) | $35.00 |
| Referee's fee to compute – CPLR §8003(a) | $250.00 |
| Fees paid for Searches – CPLR §8301(a)(10) | $250.00 |
| Serving copy of Summons and Complaint pursuant to CPLR §8301(a) | $135.00 |

Page 1

FILED  May 20 2013 Bronx County, Clerk

| | |
|---|---|
| Fee for Request for Judicial Intervention | $95.00 |
| Fee for Order of Reference | $45.00 |
| Fee for Judgment of Foreclosure Sale | $45.00 |
| TOTAL: | $1465.00 |

Dated:      December 10, 2012
            Great Neck, New York

Harry Zubli Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck NY 11021
Telephone: (516) 487-5777
Facsimile: (516) 487-4834

FILED May 20 2013 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------X

STOUT STREET FUND I, LP                         Index No.: 380471/11

                              Plaintiffs,

                                                **COSTS OF PLAINTIFF**

        -against-


18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

                              Defendants.
-------------------------------------------------------------------X


STATE OF NEW YORK
COUNTY OF NASSAU      ss.:

        The undersigned, an attorney admitted to practice in the courts of this state, affirms: that

he is the attorney of record for the Plaintiff in the above entitled action; that the foregoing

disbursements have been or will necessarily be made or incurred in this action and are reasonable

in amount; and that copies of documents or papers as charged herein were actually and

necessarily obtained for us.


        The undersigned affirms that the foregoing statements are true, under the penalties of

perjury.


Dated:        December 10, 2012
              Great Neck, New York

                                        _____
                                        Harry Zubli Esq.
                                        Attorney for Plaintiff
                                        1010 Northern Blvd., Suite 310
                                        Great Neck NY 11021
                                        Telephone: (516) 487-5777
                                        Facsimile: (516) 487-4834


                                                              Page 3

Index No.: 380471/11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

NATIONWIDE COURT SERVICES, INC.
761 KOEHLER AVENUE
SUITE A
RONKONKOMA, NY 11779
TELEPHONE: (631) 981-4400
FAX: (631) 981-7087

------------------------------------------------------------X

STOUT STREET FUND I, LP

                                        Plaintiffs,

        -against-

18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

                                        Defendants.

------------------------------------------------------------X

2013 MAY 20  AM 9: 20
COUNTY CLERK
BRONX COUNTY

FILED-RECORDED

---

## JUDGMENT OF FORECLOSURE AND SALE

---

Harry Zubli, Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck, NY 11021
Tel: (516) 487-5777
Fax: (516) 487-4834

Judgment entered
by M.C. on MAY 20 2013

# JUDGMENT OF FORECLOSURE AND SALE
### Judgment worksheet

Judge: **Hon. Mary Ann Brigantti-Hughes**

Index Number: 380471/11

Referee: Felice B. Barry, Esq.

Oath: 11/27/12            Amount: $239,657.49        As of: 10/31/12

Number of parcels: 1

Legal fees: $5,550.00

Attorney Affirmation as to accuracy of documents:  Yes_____  No_____  N/A___✓___

Action qualifies for a residential foreclosure conference:  Yes_____  No___✓___

If action qualifies, has a conference been held?  Yes_____  No_____

Proceed with foreclosure:  Yes___✓___  No_____

Comments: * COMMERCIAL *
_____
_____
_____
_____
_____

Costs and disbursements: $2,040.00

FILED  May 20 2013 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------------------------X

STOUT STREET FUND I, LP

Index No.: 380471/11

Plaintiffs,

**BILL OF
PLAINTIFF'S COSTS**

-against-

18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

Defendants.

--------------------------------------------------------------------X

## COSTS

| | | |
|---|---|---|
| Costs before Note of Issue-CPLR §8201(1) | | $200.00 |
| Allowance by Statute – CPLR §8302(a) (b) | | $150.00 |
| First $200.00 @ 10% | $20.00 | |
| Next $800.00 @ 5% | $40.00 | |
| Next $2,000.00 @ 2% | $40.00 | |
| Next $5,000.00 @ 1% | $50.00 | |
| Additional Allowance – CPLR §8302(d) | | $50.00 |

## FEES & DISBURSEMENTS

| | |
|---|---|
| Fee for Index Number – CPLR §8018(a) | $210.00 |
| Clerk's fee for filing Notice of Pendency CPLR §8018(a), §8021(a)(10) | $35.00 |
| Referee's fee to compute – CPLR §8003(a) | $250.00 |
| Fees paid for Searches – CPLR §8301(a)(10) | $460.00 |
| Serving copy of Summons and Complaint pursuant to CPLR §8301(a) | $500.00 |

Page 1

| | |
|---|---|
| Fee for Request for Judicial Intervention | $95.00 |
| Fee for Order of Reference | $45.00 |
| Fee for Judgment of Foreclosure Sale | $45.00 |
| TOTAL: | $2,040.00 |

Dated:     December 10, 2012
           Great Neck, New York

Harry Zubli Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck NY 11021
Telephone: (516) 487-5777
Facsimile: (516) 487-4834

# COMMERCIAL MORTGAGE FORECLOSURE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

ORIGINAL

-----------------------------------------------------------------------X

STOUT STREET FUND I, LP                                    Index No.: 380471/11

                              Plaintiffs,

                                                          **NOTICE**
          -against-                                       **OF MOTION**

                                                          Mortgaged Premises:
18 MS REALTY, INC.;  HUI JUN WANG;                        2117 Clinton Avenue
STATE OF NEW YORK ; CITY OF NEW                           Bronx, New York 10457
YORK,                                                     Block: 3096
                                                          Lot(s): 63
                              Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| DATE: | January 4, 2013 at 9:30 A.M. or as soon thereafter as counsel can be heard. |
| LOCATION: | At the Supreme Court of the State of New York, held in and for the County of Bronx, Room 217 at the Bronx County Courthouse, 851 Grand Concourse, Bronx, New York 10451. |
| SUPPORTING PAPERS: | Affirmation of Regularity of Harry Zubli, Esq. dated December 10, 2012, exhibits annexed hereto, and all pleadings and prior proceedings had herein. |
| RELIEF REQUESTED: | Judgment of Foreclosure and Sale; Ratification and confirmation of the Referee's Oath and Report of Amount Due of Felice B. Barry, Esq., Referee, dated November 27, 2012, and such other and further relief as may be just and proper. |
| ACTION: | The above-entitled action is to foreclose a commercial mortgage encumbering real property located in Bronx County. |
| NOTICE: | Pursuant to CPLR §2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven (7) days before the return date of this motion. |

Dated:    December 10, 2012
          Great Neck, New York

Harry Zubli Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck NY 11021
Telephone: (516) 487-5777
Facsimile: (516) 487-4834

TO:

18 MS REALTY, INC.
42-06A Bell Boulevard
Suite 300
Bayside, New York 11361
(Courtesy Copy)

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attention: Alan Gitter, Esq.
*Attorney for Defendant State of New York*
300 Motor Parkway- Suite 125
Hauppauge, NY 11788-5522
(Courtesy Copy)

And

2117 Clinton Avenue
Bronx, New York 10457
(Courtesy Copy)

HUI JUN WANG
69-57 185TH Street
Fresh Meadows, New York 11365
(Courtesy Copy)

MARIA AUGUSTO, ESQ.
*Attorney for Defendant City of New York*
345 Adams Street – 3rd Fl.
Brooklyn, New York 11201
(Courtesy Copy)

FELICE B. BARRY, ESQ., *Substitute
Referee*
118-21 Queens Blvd, Suite 212
Forest Hills, New York 11375


**ALL OTHER DEFENDANTS HAVE EITHER APPEARED AND WAIVED SERVICE
OF THIS MOTION OR ARE IN DEFAULT WITH RESPECT TO THIS ACTION.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------------X

STOUT STREET FUND I, LP

                              Plaintiffs,

     -against-

18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

                           Defendants.
------------------------------------------------------------------X

Index No.: 380471/11

**AFFIRMATION OF
REGULARITY**

     Harry Zubli Esq., the undersigned an attorney admitted to practice in the courts of this

state, affirms under penalty of perjury that:

     1.    Affirmant is the attorney for plaintiff in the above entitled action, which was

brought to foreclose a mortgage affecting real property situated in Bronx County, State of New

York, and affirmant is familiar with the details thereof.

     2.    This Affirmation of Regularity is submitted in support of plaintiff's motion for

Judgment of Foreclosure and Sale in favor of Plaintiff, Ratification and Confirmation of the

Referee's Oath and Report of Amount Due of Felice B. Barry, Esq., Referee, dated as of

[ReportDate], and such other and further relief as may be just and proper.

     3.    On or about the following date, the following named obligor(s), for the purpose of

evidencing an indebtedness in the following amount, duly executed, acknowledged and delivered

to the following named obligee the following instrument (hereafter, the "Note" a copy of which

is annexed as **Exhibit "A"**):

     INSTRUMENT:    NOTE

DATE:           MAY 17, 2010

OBLIGOR:        18 MS REALTY, INC.

OBLIGEE:        STOUT STREET FUNDING, LLC

AMOUNT:         ONE HUNDRED SEVENTY EIGHT THOUSAND EIGHT
                HUNDRED AND 00/100 ($178,800.00) DOLLARS

    4.     For the purpose of securing payment for the said indebtedness, as more fully set forth in said instrument, the said obligor(s), as mortgagor(s), on or about said date executed, acknowledged and delivered to said obligee, as mortgagee, a certain mortgage (hereafter, the "mortgage"), whereby said obligor(s), as mortagor(s), mortgaged to the said obligee, as mortgagee, certain real property known as 2117 Clinton Avenue, Bronx, New York 10457 (Block: 3096, Lot(s): 63) (hereafter, the "mortgaged premises"), which mortgaged premises are more particularly described in the legal description annexed as Schedule A thereto. See **Exhibit "B"** for copy of the Mortgage.

    5.     Said Mortgage was duly recorded as follows in the office for the recording of mortgages in the county in which said mortgaged premises were then and are now situated, and the recording data is as follows:

MORTGAGE DATE:              MAY 17, 2010

RECORDED IN OFFICE OF:      CLERK OF THE COUNTY OF BRONX

DATE OF RECORDING:          JUNE 8, 2010

CRFN NUMBER:                2010000190586

    6.     On or about May 17, 2010, STOUT STREET FUNDING, LLC assigned all of its rights, title and interest in the aforementioned Note, Mortgage and all related loan documents to

STOUT STREET FUND I, LP, the plaintiff herein. The assignment of mortgage to plaintiff was recorded in the records of the Clerk of the County of Bronx on April 8, 2011 as CRFN 2011000127727. See **Exhibit "C"** for copy of the Assignment of Mortgage and Allonge to Note. STOUT STREET FUND I, LP is the current owner and holder of the Mortgage, Note and all related loan documents. See **Exhibit "D"** for Affidavit of Merit of David Kaplan, Senior Vice President of Braddock Financial Corporation, the Manager of Stout Street Fund I GP, LLC, the General Partner of Stout Street Fund I, LP, the plaintiff herein, sworn to on June 27, 2011.

7.      STOUT STREET FUND I, LP is the current owner and holder of the Mortgage, Note and all related loan documents. See **Exhibit "D"** for Affidavit of Merit of David Kaplan, Senior Vice President of Braddock Financial Corporation, the Manager of Stout Street Fund I GP, LLC, the General Partner of Stout Street Fund I, LP, the plaintiff herein, sworn to on June 27, 2011.

8.      This action arises as a result of the non-payment of monthly installments of principal and interest and mortgagor(s)'s deposits which became due and payable on August 1, 2010 and on the first day of each subsequent month. Based upon this default in payment under the terms of the subject mortgage, plaintiff elected to exercise its option under the mortgage to declare the unpaid principal and interest immediately due and payable.

9.      On May 2, 2011, the instant action was commenced by the filing of the summons and complaint and the notice of pendency in the Office of the Clerk of Bronx County. Copies of the summons and complaint are annexed as **Exhibit "E"**, and copy of the notice of pendency is annexed hereto as **Exhibit "F"**.

10.     All of the necessary party defendant(s) have been duly served herein with summons and verified complaint in accordance with all applicable laws and statutes. See **Exhibit**

"G" for copies of the Affidavit of Service.

11.    Since the filing of the summons and verified complaint, and notice of pendency of action, the complaint has not been amended in any manner whatsoever.

12.    All of the necessary defendants are of full age and sound mind and that no necessary defendant is an absentee, prior encumbrancer or in the military.

13.    More than thirty days have elapsed since the completion of service of process in this action.

14.    No defendant has answered the complaint or moved with respect thereto and the time to do so has expired including the time granted pursuant to any extension thereof.

15.    None of the defendants have appeared in this action (and no extension of time to answer the complaint has been given), except that defendant State of New York appeared by filing a notice of appearance by its attorney Alan Gitter, Esq., and defendant City of New York appeared by filing a notice of appearance by its attorney Maria Augusto, Esq. See **Exhibit "H"** for Notices of Appearance. All of the other defendants herein are in default.

16.    A second copy of the summons and complaint was mailed to Defendant HUI JUN WANG on November 22, 2011 pursuant to Section 3215 of CPLR.  None of the additional mailings were returned as undeliverable.  Copy of affidavits of mailing is annexed as **Exhibit "I"**.

17.    The whole amount secured by the mortgage is due and payable.

18.    All the proceedings in this action have been regular and in accordance with the rules and practice of this Court.

19.    That a notice of pendency of action in due form and containing correctly and truly all the particulars required by law to be stated in such notices was duly filed in the Office of the

Clerk of Bronx County on May 2, 2011.  Copy of notice of pendency is annexed as **Exhibit "F"**.

20.    On October 4, 2011 an Order of Reference and Amendment was signed pursuant to which the Court appointed Peter DeFilippis, Esq. as Referee herein to, among other things, compute the amounts due to Plaintiff.  Notice of Entry of the Order of Reference and Amendment was served on defendants on October 25, 2011. See **Exhibit "J"** for a copy of the Notice of Entry and Order of Reference and Amendment therein contained, including Affidavit of Service.

21.    Subsequently, Mr. DeFilippis requested that the Court relieve Mr. DeFilippis from his duties as a referee in the action. See **Exhibit "K"** annexed.

22.    Accordingly, upon application by Plaintiff, on September 19, 2012, an Order Appointing Substitute Referee was signed whereby the Court appointed Felice B. Barry, Esq., as Referee herein in lieu and stead of Peter DeFilippis, Esq.   Notice of Entry of the Order Appointing Substitute Referee was served on defendants on October 23, 2012. See **Exhibit "L"** for a copy of the Notice of Entry and Order Appointing Substitute Referee therein contained, including Affidavit of Service.

23.    Felice B. Barry, Esq., the referee appointed herein computed the amount due plaintiff and issued the oath and report dated as of [ReportDate] which is annexed hereto as **Exhibit "M"**.

24.    No previous application has been made for a Judgment of Foreclosure and Sale herein asked for or any part thereof.

**WHEREFORE**, plaintiff respectfully requests Judgment for the relief demanded in the complaint in the form of the order for the Judgment of Foreclosure and Sale annexed hereto, Ratification and Confirmation of the Referee's Report of Amounts Due herein, and for such other

Page 5

FILED  May 20 2013 Bronx County Clerk

and further relief as to the Court may deem just and proper.

Dated:        December 10, 2012
              Great Neck, New York

              Harry Zubli Esq.
              Attorney for Plaintiff
              1010 Northern Blvd., Suite 310
              Great Neck NY 11021
              Telephone: (516) 487-5777
              Facsimile: (516) 487-4834

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------------------X
STOUT STREET FUND I, LP                                    Index No.: 380471/11

                                    Plaintiffs,            **AFFIRMATION OF**
                                                           **LEGAL SERVICES**

        -against-


18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK,

                            Defendants.
------------------------------------------------------------------------X

        Harry Zubli Esq., an attorney duly admitted to practice law in the State of New York and

attorney for plaintiffs herein, affirms the following under the penalty of perjury:

        1.      The mortgage contract requires the borrower to pay legal fees and disbursements,

and the mortgagee expects that contract to be sustained and reasonable legal fees plus

disbursements awarded by the court in the judgment.  The mortgagee properly adds the amount

of legal fees awarded into its upset price and expects that a successful third party bidder will pay

the full legal fees and disbursements incurred on behalf of the mortgagee in foreclosing the

mortgage.  The mortgagee recognizes that in many instances where the sale of property does not

attract a successful third party bidder, the mortgagee becomes the successful bidder at the

foreclosure sale.  Under these circumstances, the transfer of title to the mortgagee does not

involve the exchange of funds and the ultimate sale of the property to a third party is somewhat

delayed.  In such cases, the mortgagee and your affirmant agree to delay such payment of legal

fees.

        2.  The volume of the foreclosure work and other case load and the large number of

personnel involved makes it prohibitive if not impossible for your affirmant to keep specific time

records for each foreclosure action.

3. I am not a salaried employee of plaintiff and I am familiar with the proceedings and events which have occurred in this case based upon the records maintained by my office.

4. The Oath and Report sets forth $239,657.49 as being due on the note and mortgage as of October 31, 2012.

5. Real Property Actions and Proceedings Law Section 1341 and Section 1351(1) authorize a mortgagee's right to have its legal fees and disbursements paid pursuant to the mortgage contract.

6. The following legal work has been done in connection with this foreclosure proceeding. As no specific time records have been kept.

7. Total hours involved were approximately:

a) Attorneys      Approximately 13 hours at $350.00 per hour = $4,550.00

b) Assistants      Approximately 10 hours at $100.00 per hour = $1,000.00

WHEREFORE, it is respectfully requested that plaintiff be awarded legal fees in the sum of $5,550.00 for the entire case, and for such other and further relief as the court may deem just and proper.

DATED:      December 10, 2012
Great Neck, New York

Harry Zubli Esq.,
1010 Northern Blvd., Suite 310
Great Neck NY 11021
Tel: (516) 487-5777
Fax: (516) 487-4834

FILED  May 20 2013 Bronx Cou  , Clerk

CERTIFIED TO BE A TRUE
AND ACCURATE COPY

# NOTE

Loan Number: 100315000

MAY 17, 2010                    NEW YORK                    NEW YORK
[Date]                          [City]                      [State]

2117 CLINTON AVENUE, NEW YORK, NEW YORK 10457
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 178,800.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is STOUT STREET FUNDING, LLC, A DELAWARE LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      15.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on  JULY 1 2010  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  DECEMBER 1, 2010  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  PO BOX 173704, DENVER, COLORADO 80217-3704
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments  ** See attached Interest Only Note Addendum.

My monthly payment will be in the amount of U.S. $ 2,235.00

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

NEW YORK FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Page 2 of 3
Form 3233 1/01

DocMagic ℰℱⓘⓇⓜⓈ 800-649-1362
www.docmagic.com

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

18 MS REALTY, INC.

_____(Seal)                        _____(Seal)
HUI JUN WANG                          -Borrower                                                          -Borrower


_____(Seal)                        _____(Seal)
                                      -Borrower                                                          -Borrower


_____(Seal)                        _____(Seal)
                                      -Borrower                                                          -Borrower


*[Sign Original Only]*

NEW YORK FIXED RATE NOTE—Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                          Page 3 of 3

DocMagic *€₨₵₮₥₥₲* 800-649-1362
www.docmagic.com

Loan Number: 100315000

# INTEREST-ONLY ADDENDUM
# TO FIXED RATE NOTE

Property Address: 2117 CLINTON AVENUE, NEW YORK, NEW YORK 10457

THIS INTEREST-ONLY ADDENDUM ("ADDENDUM") is made this      17th         day of
MAY, 2010           and is incorporated into and intended to form a part of the Fixed Rate Note
(the "Note") dated the same date as this Addendum executed by the undersigned and payable to
STOUT STREET FUNDING, LLC, A DELAWARE LIMITED LIABILITY COMPANY
                                                                  (the "Lender").

THIS ADDENDUM supersedes and replaces Sections 3(A), 3(B), 4, and 6(A) of the Note. This Addendum
does not supersede, replace or revise any other Section of the Note.

3.   PAYMENTS
     (A)  Time and Place of Payments
     I will make a payment every month. This payment will be for interest only for the first   5     months (the
"Interest Only Period"), and then will consist of principal and interest.
     I will make my monthly payment on the        1st          day of each month beginning on
JULY, 2010         . I will make these payments every month until I have paid all of the principal
and interest and any other charges described below that I may owe under this Note. Each monthly payment will be
applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to
interest before Principal. If, on DECEMBER 1, 2010     , I still owe amounts under this Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at  PO BOX 173704, DENVER, COLORADO
80217-3704
                                        or at a different place if required by the Note Holder.

     (B)  Amount of Monthly Payments
     My monthly payment will be in the amount of U.S. $ 2,235.00     for the first  5     months of
this Note, and thereafter will be in the amount of U.S. $ 181,035.00    . The Note Holder will notify me
prior to the date of change in monthly payment.

4.   BORROWER'S RIGHT TO PREPAY
     I have the right to make payments of Principal at any time before they are due. A payment of Principal only
is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
     I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder
will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder
may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my
Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in
the due date of my monthly payment unless the Note Holder agrees in writing to those changes.
     If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will
decrease for the remainder of the term when my payments consist only of interest as well as during the time that my
payments consist of principal and interest. If the partial Prepayment is made during the period when my payments
consist of principal and interest.

consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A)   Late Charge for Overdue Payments

   If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be     2.000   % of my overdue payment of interest during the Interest Only Period.  At the end of the Interest Only Period, it will be        2.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Fixed Rate Note.

18 MS REALTY,  INC.

_____         _____
Borrower HUI  JUN WANG              Date       Borrower                        Date


_____         _____
Borrower                        Date       Borrower                        Date


_____         _____
Borrower                        Date       Borrower                        Date

## BALLOON ADDENDUM TO NOTE AND RIDER TO MORTGAGE

Loan Number: 100315000

Servicing Number:

Date: MAY 17, 2010

For value received, the undersigned ("Borrower(s)") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note and Mortgage of even date.  To the extent the provisions of this Balloon Addendum to Note and Rider to Mortgage are inconsistent with the provisions of the Note and Mortgage, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note and Mortgage.

THE TERM OF THE LOAN IS  0.5  YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING  0.5   YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND  SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN.  YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

☐ The following terms are applicable if this box is checked:

LENDER GUARANTEES REFINANCING AT MATURITY, BUT INTEREST WILL NOT BE RECALCULATED ACCORDING TO A PRE-SPECIFIED INDEX.

THE TERM OF THE LOAN IS 0.5   YEARS. AT MATURITY, 0.5 YEARS FROM THE DATE ON WHICH THE LOAN IS MADE, AND AT THE TIME OF EACH FURTHER REFINANCING, THE LOAN WILL BE REFINANCED AT AN INTEREST RATE ESTABLISHED BY THE LENDER WITH REFERENCE TO MARKET RATES. SUCH INTEREST RATE(S) MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.

18 MS REALTY, INC.

_Borrower_ HUI JUN WANG            Date        Borrower                        Date

_Borrower_                        Date        Borrower                        Date

_Borrower_                        Date        Borrower                        Date

DocMagic ☎ 800-649-1362
www.docmagic.com

Loan Number: 100315000

## BALLOON PAYMENT DISCLOSURE
*Notice: Read Before Signing Your Loan Documents*

This loan provides for  5   monthly payments of: (check one)
[   ] principal and interest  [X  ] interest only
in the amount of $ 2,235.00       each.  Assuming that all of the monthly payments have been paid exactly on
the date that each is due, a final balloon payment of the then outstanding principal balance plus all earned interest remaining
unpaid estimated to be in the amount of $ 181,035.00                          shall become due and payable on
DECEMBER 1, 2010            (the "Maturity Date").  This loan is amortized over a   360   month period.

DO NOT SIGN ANY LOAN DOCUMENTS IF YOU
HAVE ANY QUESTIONS ABOUT YOUR LOAN PAYMENTS.

Unless otherwise expressly disclosed in the Note, or in an Addendum or a Rider to the Note, THE LENDER IN THIS
TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF
THIS LOAN DUE ON THE MATURITY DATE.  You may be required to payoff the entire principal balance, plus any
unpaid interest due thereon, on the Maturity Date using personal assets.  If this Lender, or any other Lender, agrees to
refinance the outstanding balance due on the Maturity Date, you may be required to pay the then prevailing interest rate, which
may be higher or lower than the interest rate specified in the Note, plus loan origination costs and fees as are typically incurred
when creating a new loan.

I hereby certify that the Borrower(s) have received an oral
explanation of the balloon payment provisions of this loan.

ALL BORROWERS MUST SIGN AND DATE

I/We hereby acknowledge receipt of the above notice
concerning the balloon payment provisions of this loan.
I/We further acknowledge that these provisions have also
been orally explained to me/us.

18 MS REALTY, INC.

_____
(Signature of Loan Officer)

X _____  5-17-10
HUI JUN WANG                      (Date)

Loan Number:  100315000

_____
(Date)

_____
(Date)

_____
(Date)

_____
(Date)

_____
(Date)

BALLOON PAYMENT DISCLOSURE
07/27/06

DocMagic eForms 800-649-1362
www.docmagic.com

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010060200254002001EF64D

| | |
|---|---|
| Document ID: 2010060200254002 | Document Date: 05-17-2010 | Preparation Date: 06-02-2010 |
| Document Type: MORTGAGE | | |
| Document Page Count: 23 | | |

**PRESENTER:**
C & G LAND ABSTRACT P/U-KAREN LEVINE
FIDELITY NATIONAL TITLE INS. CO.
21 WALT WHITMAN ROAD
HUNTINGTON STATION, NY  11746
CG-80675B

**RETURN TO:**
TITAN LENDERS CORP.
5353 W. DARTMOUTH AVENUE
STE 50 LOWER LEVEL.
DENVER, CO  80227

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---------|-------|-----|------|---------|
| BRONX | 3096 | 63 | Entire Lot | 2117 CLINTON AVENUE |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN _____  or  Document ID _____  or  _____ Year _____ Reel _____ Page _____ or File Number _____

### PARTIES

**MORTGAGOR/BORROWER:**
18 MS REALTY, INC.
42-40A BELL BOULEVARD, STE 300
BAYSIDE, NY 11361

**MORTGAGEE/LENDER:**
STOUT STREET FUNDING, LLC
1200 17TH STREET, SUITE 880
DENVER, CO  80202

### FEES AND TAXES

| Mortgage | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 178,800.00 | Filing Fee: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 178,800.00 | NYC Real Property Transfer Tax: | $ | 0.00 |
| Exemption: | | | | | |
| TAXES: County (Basic): | $ | 894.00 | NYS Real Estate Transfer Tax: | $ | 0.00 |
| City (Additional): | $ | 1,788.00 | | | |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 447.00 | | | |
| MTA: | $ | 536.40 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 3,665.40 | | | |
| Recording Fee: | $ | 152.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed       06-08-2010 16:30
City Register File No.(CRFN):
                   2010000190586

*Annette M. Hill*

*City Register Official Signature*

FILED May 20 2013 Bronx Co. .y Clerk

CG-806757B

Mortgage Recording Tax:

After Recording Return To:
TITAN LENDERS CORP
5353 W. DARTMOUTH AVENUE SUITE 50 LOWER LEVEL
DENVER, COLORADO 80227
Loan Number: 100315000

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated  MAY 17, 2010          , together with
all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."   18 MS REALTY, INC.

whose address is  42-06A BELL BOULEVARD, SUITE 300, BAYSIDE, NEW YORK
11361                                        sometimes will be called "Borrower"
and sometimes simply "I" or "me."
(C) "Lender."  STOUT STREET FUNDING, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
DELAWARE                                          , Lender's address is
1200 17TH STREET SUITE 860, DENVER, COLORADO 80202

(D) "Note." The note signed by Borrower and dated  MAY 17, 2010
will be called the "Note." The Note shows that I owe Lender   ONE HUNDRED SEVENTY-EIGHT
THOUSAND EIGHT HUNDRED AND 00/100    Dollars (U.S. $ 178,800.00       )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to
pay the debt in full by  DECEMBER 1, 2010    .
(E) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."
(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights
in the Property" sometimes will be called the "Sums Secured."

Section:              Block:             Lot(s)/Unit No(s).: .

(H)  "Riders."  All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [X] Balloon Rider
- [X] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

(I)  "Applicable Law."  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J)  "Community Association Dues, Fees, and Assessments."  All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K)  "Electronic Funds Transfer."  "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items."  Those items that are described in Section 3 will be called "Escrow Items."

(M)  "Miscellaneous Proceeds."  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N)  "Mortgage Insurance."  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment."  The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P)  "RESPA."  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property.  I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)  Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B)  Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C)  Keep all of my other promises and agreements under this Security Instrument and the Note.

Loan Number: 100315000

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 17th day of MAY, 2010
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to STOUT STREET FUNDING, LLC, A DELAWARE
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2117 CLINTON AVENUE, NEW YORK, NEW YORK 10457
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

DocMagic ℰℱℴℛℳ� 800-649-1361
www.docmagic.com

FILED  May 20 2013 Bronx County Clerk

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

18 MS REALTY, INC.

_____ (Seal)     _____ (Seal)
HUI JUN WANG                -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                                          -Borrower

DocMagic *DocMagic* 800-649-1362
www.docmagic.com

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Page 3 of 3
Form 3170 1/01

————————[Space Above This Line For Recording Data]————————

Loan Number: 100315000

# BALLOON RIDER

THIS BALLOON RIDER is made this  17th  day of  MAY  2010              , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to STOUT STREET FUNDING, LLC, A DELAWARE
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2117 CLINTON AVENUE, NEW YORK, NEW YORK 10457
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04

Page 1 of 2

DocMagic eRorms  800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

18 MS REALTY, INC.

_____          _____
Borrower HUI JUN WANG.              Date    Borrower                        Date


_____          _____
Borrower                            Date    Borrower                        Date


_____          _____
Borrower                            Date    Borrower                        Date

# BALLOON ADDENDUM TO NOTE AND RIDER TO MORTGAGE

Loan Number: 100315000

Servicing Number:

Date: MAY 17, 2010

For value received, the undersigned ("Borrower(s)") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note and Mortgage of even date. To the extent the provisions of this Balloon Addendum to Note and Rider to Mortgage are inconsistent with the provisions of the Note and Mortgage, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note and Mortgage.

> THE TERM OF THE LOAN IS  0.5  YEARS.  AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING  0.5  YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

> THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM.  THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

> ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND  SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN.  YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

☐ The following terms are applicable if this box is checked:

LENDER GUARANTEES REFINANCING AT MATURITY, BUT INTEREST WILL NOT BE RECALCULATED ACCORDING TO A PRE-SPECIFIED INDEX.

> THE TERM OF THE LOAN IS  0.5     YEARS.  AT MATURITY,  0.5 YEARS FROM THE DATE ON WHICH THE LOAN IS MADE, AND AT THE TIME OF EACH FURTHER REFINANCING, THE LOAN WILL BE REFINANCED AT AN INTEREST RATE ESTABLISHED BY THE LENDER WITH REFERENCE TO MARKET RATES. SUCH INTEREST RATE(S) MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.

18 MS REALTY, INC.

_____   _____   _____   _____
Borrower HUI JUN WANG              Date       Borrower                      Date


_____   _____   _____   _____
Borrower                          Date       Borrower                      Date


_____   _____   _____   _____
Borrower                          Date       Borrower                      Date

### DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at        2117 CLINTON AVENUE
                                                    [Street]

NEW YORK                                    , New York        10457
(City, Town or Village)                                      [Zip Code]

This Property is in  BRONX                       County.  It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.:  BLOCK 3096 LOT 63

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

### PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains other promises and agreements that vary in different parts of the country.  My promises and agreements are stated in "plain language."

### COVENANTS

I promise and I agree with Lender as follows:

1.  **Borrower's Promise to Pay.**  I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.  I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

# C & G LAND ABSTRACT, LLC.

## Title No. CG-80675B

## SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the Westerly side of Clinton Avenue distant 94.50 feet Southerly from the corner formed by the intersection of the Southerly side of East 181st Street with the Westerly side of Clinton Avenue;

RUNNING THENCE Westerly and parallel with 181st Street, 41.06 feet;

THENCE Southerly and parallel with Clinton Avenue, 5.50 feet;

THENCE Westerly and parallel with 181st Street, 50 feet;

THENCE Southerly and parallel with Clinton Avenue, 15.96 feet;

THENCE Easterly and again parallel with 181st Street and part of the way through a party wall 91.06 feet to the Westerly side of Clinton Avenue;

THENCE Northerly along the Westerly side of Clinton Avenue, 21.46 feet to the point or place OR BEGINNING.

FOR CONVEYANCING ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or in keeping all of my other promises and agreements secured by this Security Instrument.

2.   **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.   **Monthly Payments For Taxes And Insurance.**

(a)   **Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)   The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)   The leasehold payments or ground rents on the Property (if any);

(3)   The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)   The premium for Mortgage Insurance (if any);

DocMagic eForms 800-649-1362
www.docmagic.com

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   **Borrower's Obligation to Pay Charges, Assessments And Claims.**  I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.**  I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

DocMagic eForms 800-849-1362
www.docmagic.com

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)  **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)  **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.  **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender

about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.   **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement

between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that:  (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 9 of 16

DocMagic eForms 800-649-1362
www.docmagic.com

FILED  May 20 2013 Bronx Co   .y Clerk

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 10 of 10

DocMagic ℯ♦ᵣₘₛ 800-649-1362
www.docmagic.com

limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee.  Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits:  (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note).  If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15.  **Notices Required under this Security Instrument.**  All notices given by me or Lender in connection with this Security Instrument will be in writing.  Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address is the address of the Property unless I give notice to Lender of a different address.  I will promptly notify Lender of my change of address.  If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address.  Any notice in connection with this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Law That Governs this Security Instrument; Word Usage.**  This Security Instrument is governed by federal law and the law of New York State.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract.  If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or of the Note which can operate, or be given effect, without the conflicting provision.  This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument:  (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.**  I will be given one copy of the Note and of this Security Instrument.

18.  **Agreements about Lender's Rights If the Property Is Sold or Transferred.**  Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement.  The notice will give me at least 30 days to make the required payment.  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19.  **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.**  Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped.  I will have this right at any time before the earliest of:  (a) five days before sale of the Property under any power of sale granted by this Security Instrument;  (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument.  In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under. this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store

FILED  May 20 2013 Bronx County Clerk

Hazardous Substances on the Property.  I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so.  I also will not do, nor allow anyone else to do, anything affecting the Property that:  (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products).  I may use or store these small quantities on the Property.  In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of:  (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including  but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22.  **Lender's Rights If Borrower Fails to Keep Promises and Agreements.**  Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument.  Lender may do this without making any further demand for payment.  This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold.  At this sale Lender or another Person may acquire the Property.  This is known as "Foreclosure and Sale."  In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe  Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)  I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)  Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1)  The promise or agreement that I failed to keep or the default that has occurred;

(2)  The action that I must take to correct that default;

(3)  A date by which I must correct the default.  That date will be at least  30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5)  That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this

Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(f) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property  [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this
Security Instrument and in any Rider signed by me and recorded with it.

18 MS REALTY, INC.

_____ (Seal)          _____ (Seal)
HUI JUN WANG                    -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

Witness:                                        Witness:

_____                 _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          DocMagic eForms 800-649-1362
Form 3033 1/01                                  Page 15 of 16                  www.docmagic.com

――――――――――――― [Space Below This Line For Acknowledgment] ―――――――――――

State of New York          )
                           ) ss.
County of Nassau           )

On the __17th__ day of __MAY__ , in the year __2010__ , before me,

the undersigned, personally appeared __HUI JUN WANG__

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

SEAL

Notary Public State of New York

TONi MARiE COMANO
Print or Type Name

TONI MARIE COMANDO
NOTARY PUBLIC, State of New York
No. 01CO6042470
Qualified in Nassau County
Commission Expires May 30, 2010

(Seal, if any)

My commission expires: __5-30-2010__

Tax Map Information No.: BLOCK 3096 LOT 63

FILED  May 20 2013 Bronx County Clerk



## NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2011030400124001002E6C42

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2011030400124001 | Document Date: 05-17-2010 | Preparation Date: 03-22-2011
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 3

| PRESENTER: | RETURN TO: |
|---|---|
| IDEAL ABSTRACT, LLC, AS AGENT PICK UP REDVISION OLD REPUBLIC NATIONAL TITLE INSURANCE CTSY 88 175 PINELAWN ROAD SUITE 210 MELVILLE, NY 11747 | IDEAL ABSTRACT, LLC, AS AGENT PICK UP REDVISION OLD REPUBLIC NATIONAL TITLE INSURANCE CTSY 88 175 PINELAWN ROAD SUITE 210 MELVILLE, NY 11747 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3096 | 63 | Entire Lot | 2117 CLINTON AVENUE |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN: 2010000190586

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| STOUT STREET FUNDING LLC 1200 17TH STREET DENVER, CO 80202 | STOUT STREET FUNDING I, LP 1200 17TH STREET DENVER, CO 80202 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed     04-08-2011 10:59
City Register File No.(CRFN):
2011000127727

*Annette M Hill*

*City Register Official Signature*

FILED  May 20 2013 Bronx County Clerk



2011030400124001002E6C42

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2011030400124001 | Document Date: 05-17-2010 | Preparation Date: 03-22-2011 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

**PRESENTER:**
IDEAL ABSTRACT, LLC, AS AGENT PICK UP
REDVISION
OLD REPUBLIC NATIONAL TITLE INSURANCE CTSY
88
175 PINELAWN ROAD SUITE 210
MELVILLE, NY  11747

**RETURN TO:**
IDEAL ABSTRACT, LLC, AS AGENT PICK UP
REDVISION
OLD REPUBLIC NATIONAL TITLE INSURANCE
CTSY 88
175 PINELAWN ROAD SUITE 210
MELVILLE, NY  11747

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3096 | 63 | Entire Lot | 2117 CLINTON AVENUE |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN: 2010000190586

### PARTIES

**ASSIGNOR/OLD LENDER:**
STOUT STREET FUNDING LLC
1200 17TH STREET
DENVER, CO  80202

**ASSIGNEE/NEW LENDER:**
STOUT STREET FUNDING I, LP
1200 17TH STREET
DENVER, CO  80202

### FEES AND TAXES

| | | | | |
|---|---|---|---|---|
| **Mortgage** | | | Filing Fee: | |
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

— Assignment of Mortgage without Covenant — Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**KNOW THAT STOUT STREET FUNDING, LLC**, assignor,

in consideration of  Ten Dollars and other good and valuable consideration dollars ($10.00),

paid by STOUT STREET FUND I, LP, assignee,

hereby assigns unto the assignee,

Mortgage dated the 17th day of May, in the year 2010 , made by 18 MS REALTY, INC.

To STOUT STREET FUNDING, LLC

in the principal sum of $178,800.00 and recorded on the 8th day of June in the year 2010,         as CRFN 2010000190586

, in the office of the City Register of the City of New York, Bronx County

        covering premises

Address: 2117 Clinton Avenue, Bronx, New York 10457

Block: 3096

Lot: 63        This assignment is not subject to the requirements of  section 275 of the New York Real Property Law because it is an assignment within the secondary mortgage market

Which mortgage was not further assigned.

THIS ASSIGNMENT OF MORTGAGE IS MADE WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED.

TOGETHER with the bond(s) or note(s) or obligation(s) described in said mortgage(s), and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the 17th day of May , in the year 2010

IN PRESENCE OF:                                                           to be effective.

                                        STOUT STREET FUNDING, LLC

                                        BY: Terrence DeWyse
                                        TITLE: Vice President

**ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE**

State of New York, County of          , ss:

On the        day of        in the year        before me, the
undersigned, personally appeared        , personally known to me or
proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

**ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS
TAKEN IN NEW YORK STATE**

State of New York, County of          , ss:

On the        day of        in the year        , before me, the
undersigned, a Notary Public in and for said State, personally
appeared        . the subscribing witness to the foregoing instrument,
with whom I am personally acquainted, who, being by me duly
sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof);
that he/she/they know(s)

to be the individual described in and who executed the foregoing
instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed
his/her/their name(s) as a witness thereto

# Assignment of Mortgage without Covenant

Title No. N/A

STOUT STREET FUNDING, LLC
TO
STOUT STREET FUND I, LP

---

**ACKNOWLEDGMENT TAKEN IN NEW YORK STATE**

State of New York, County of          , ss:

On the        day of        in the year        , before me, the
undersigned, personally appeared        , personally known to me or
proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

**ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK
STATE**

*State of _Colorado_, County of _Denver_, ss:

*(Or insert District of Columbia, Territory, Possession or Foreign County)

On the _24th_ day of _February_ in the year _20__.
before me, the undersigned, personally appeared _Renata Denyse_,
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), that by his/her/their
signature(s) on the instrument, the individual(s) or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual make such appearance before the undersigned in
the
_city of Denver, Colorado_
(add the city or political subdivision and the state or country or other
place the acknowledgement was taken).


Notary Public
my commission expires: 10/10/2011

SECTION:

BLOCK:

LOT: 63

COUNTY OR TOWN: Bronx

RETURN BY MAIL TO:

The Law Office of Harry Zubli, Esq.
1010 Northern Blvd., Suite 310
Great Neck, New York 11021

---

**DISTRIBUTED BY**

**YOUR TITLE EXPERTS**
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-9396

# C & G LAND ABSTRACT, LLC.

### Title No. CG-80675B

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the Westerly side of Clinton Avenue distant 94.50 feet Southerly from the corner formed by the intersection of the Southerly side of East 181st Street with the Westerly side of Clinton Avenue;

RUNNING THENCE Westerly and parallel with 181st Street, 41.06 feet;

THENCE Southerly and parallel with Clinton Avenue, 5.50 feet;

THENCE Westerly and parallel with 181st Street, 50 feet;

THENCE Southerly and parallel with Clinton Avenue, 15.96 feet;

THENCE Easterly and again parallel with 181st Street and part of the way through a party wall 91.06 feet to the Westerly side of Clinton Avenue;

THENCE Northerly along the Westerly side of Clinton Avenue, 21.46 feet to the point or place or BEGINNING.



**FOR CONVEYANCING ONLY**

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

# COMMERCIAL MORTGAGE FORECLOSURE – NOT SUBPRIME OR HIGH COST LOAN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

----------------------------------------------------------------------X

STOUT STREET FUND I, LP

                               Plaintiffs,

     -against-

18 MS REALTY, INC.; HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK;

"JOHN DOE 1-10" and "JANE DOE 1-10" said
names being fictitious parties intended being
possible tenants, occupants, persons or
corporations, if any, having an interest in or lien
upon the premises, described in the complaint,

                               Defendants.

----------------------------------------------------------------------X

Index No.:

Date Filed:

**SUMMONS**

Mortgaged Premises:
2117 Clinton Avenue
Bronx, New York 10457
Block: 3096
Lot(s): 63

Plaintiff designates
Bronx County as
Place of Trial

TO THE ABOVE NAMED DEFENDANT(S):

     **YOU ARE HEREBY SUMMONED** to answer the Complaint in the above entitled action and to serve a copy of your Answer on the plaintiffs attorney within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after completion of service where service is made in any other manner than personal delivery within the State. The United States of America, if designated as a defendant in this action, may answer or appear within sixty (60) days of service hereof. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint. In the event that there is a deficiency in the sale proceeds, a deficiency judgment may be entered

against you. Bronx County is designated as the place of trial. The basis of venue is the location

of the mortgaged premises.


YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A
DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**TO THE DEFENDANT(S), 18 MS REALTY, INC. and HUI JUN WANG:** If you have
obtained an order of discharge from Bankruptcy court, which includes this debt, and you have
not reaffirmed your liability for this debt, this law firm is not alleging that you have any personal
liability for this debt and will not seek a money judgment against you. Even if a discharge has
been obtained, this lawsuit will continue and we will seek a judgment authorizing the sale of the
mortgaged premises.

**NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME**

**If you do not respond to this summons and complaint by serving a copy of the answer on
the attorney for the mortgage company who filed this foreclosure proceeding against you
and filing the answer with the court, a default judgment may be entered and you can lose
your home.**

**Speak to an attorney or go to the court where your case is pending for further information
on how to answer the summons and protect your property.**

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE
ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE
ANSWER WITH THE COURT.**


Dated:      April 5, 2011
            Great Neck, New York

            Harry Zubli Esq.
            Attorney for Plaintiff
            1010 Northern Blvd., Suite 310
            Great Neck NY 11021
            Telephone: (516) 487-5777
            Facsimile: (516) 487-4834

# Help for Homeowners In Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

## Summons and Complaint

You are in danger of losing your home. If you fail to respond to the summons and complaint in this foreclosure action, you may lose your home. Please read the summons and complaint carefully. You should immediately contact an attorney or your local legal aid office to obtain advice on how to protect yourself.

## Sources of Information and Assistance

The State encourages you to become informed about your options in foreclosure. In addition to seeking assistance from an attorney or legal aid office, there are government agencies and non-profit organizations that you may contact for information about possible options, including trying to work with your lender during this process.

To locate an entity near you, you may call the toll-free helpline maintained by the New York State Banking Department at 1-877-BANK-NYS (1-877-226-5697) or visit the Department's website at www.banking.state.ny.us.

## Foreclosure Rescue Scams

Be careful of people who approach you with offers to "save" your home. There are individuals who watch for notices of foreclosure actions in order to unfairly profit from a homeowner's distress. You should be extremely careful about any such promises and any suggestions that you pay them a fee or sign over your deed. State law requires anyone offering such services for profit to enter into a contract which fully describes the services they will perform and fees they will charge, and which prohibits them from taking any money from you until they have completed all such promised services.

# COMMERCIAL FORECLOSURE – NOT SUBPRIME OR HIGH COST LOAN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------------------------X

STOUT STREET FUND I, LP

                                   Plaintiffs,

          -against-

18 MS REALTY, INC.; HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK;

"JOHN DOE 1-10" and "JANE DOE 1-10" said
names being fictitious parties intended being
possible tenants, occupants, persons or
corporations, if any, having an interest in or lien
upon the premises, described in the complaint,

                                   Defendants.
--------------------------------------------------------------------X

Index No.:
Date Filed:

**VERIFIED**
**COMPLAINT**

Mortgaged Premises:
2117 Clinton Avenue
Bronx, New York 10457
Block: 3096
Lot(s): 63

Plaintiff, by its attorneys, Harry Zubli Esq., complaining of defendant(s), respectfully

alleges upon information and belief as follows:

   1.     Plaintiff, STOUT STREET FUND I, LP is a Delaware limited partnership

authorized to do business in the State of New York.

   2.     Any defendant captioned as a corporation is a New York corporation.

   3.     On or about the following date, the following named obligor(s), for the purpose of

evidencing an indebtedness in the following amount, duly executed, acknowledged and delivered

to the following named obligee the following instrument (hereafter, the "Note" or the "note"):

Page 1

| | |
|---|---|
| INSTRUMENT: | NOTE |
| DATE: | MAY 17, 2010 |
| OBLIGOR: | 18 MS REALTY, INC. |
| OBLIGEE: | STOUT STREET FUNDING, LLC |
| AMOUNT: | ONE HUNDRED SEVENTY EIGHT THOUSAND EIGHT HUNDRED AND 00/100 ($178,800.00) DOLLARS |

4.      For the purpose of securing payment for the said indebtedness, as more fully set forth in said instrument, the said obligor(s), as mortgagor(s), on or about said date executed, acknowledged and delivered to said obligee, as mortgagee, a certain mortgage (hereafter, the "Mortgage" or the "mortgage"), wherein and whereby said obligor(s), as mortagor(s), mortgaged to the said obligee, as mortgagee, certain real property known as 2117 Clinton Avenue, Bronx, New York 10457 (Block: 3096, Lot(s): 63) (hereafter, the "Mortgaged Premises" or the "mortgaged premises"), which mortgaged premises are more particularly described in the legal description annexed hereto as **Exhibit "A".**

5.      Said mortgage was duly recorded as follows in the office for the recording of mortgages in the county in which said mortgaged premises were then and are now situated, and the recording data is as follows:

| | |
|---|---|
| MORTGAGE DATE: | MAY 17, 2010 |
| RECORDED IN OFFICE OF: | CLERK OF THE COUNTY OF BRONX |
| DATE OF RECORDING: | JUNE 8, 2010 |
| CRFN NUMBER: | 2010000190586 |

6.     On or about May 17, 2010, STOUT STREET FUNDING. LLC assigned all of its rights, title and interest in the aforementioned Note, Mortgage and all related loan documents to STOUT STREET FUND I, LP, the plaintiff herein. The assignment of mortgage to plaintiff was recorded in the records of the Clerk of the County of Bronx on April 8. 2011 as CRFN 2011000127727.

7.     STOUT STREET FUND I, LP is the current owner and holder of the Mortgage, Note and all related loan documents.

8.     Any and all applicable mortgage recording tax was duly paid at the time of recording of the applicable mortgage.

9.     Said mortgage contains express covenants in substance as follows:

> a.   The mortgagor(s) shall pay principal and interest on time to the mortgagee together with any late charges due pursuant to the note.

> b.   The mortgagor(s) shall obtain and maintain hazard insurance to cover all buildings and other improvements upon the mortgaged premises.

> c.   In the event of default by the mortgagor(s) in the payment of any amount owed to the mortgagee for principal and interest when due, the entire unpaid balance shall become due at the option of the mortgagee.

> d.   That the mortgagor(s) will pay all taxes, assessments, sewer rates or water rates and in default thereof, the mortgagee may pay the same.

> e.   That in the event mortgagee has to defend or prosecute mortgagee's rights, mortgagor shall pay the cost thereof, including reasonable legal fees. (copy of recorded mortgage annexed hereto as **Exhibit "B"**).

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
----------------------------------------------------------------------X

STOUT STREET FUND I, LP                          Index No.: 380471/11

                                    Plaintiffs,

                                                          **AFFIDAVIT**
                                                          **OF MERIT**

        -against-


18 MS REALTY, INC.;  HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK;

"JOHN DOE 1-10" and "JANE DOE 1-10" said
names being fictitious parties intended being
possible   tenants,   occupants,   persons   or
corporations, if any, having an interest in or lien
upon the premises, described in the complaint,

                                    Defendants.
----------------------------------------------------------------------X


STATE OF _Colorado_   )
                                    )  ss:
COUNTY OF _Denver_  )


David Kaplan, being duly sworn, deposes and says:


1.       I am the Senior Vice President of Braddock Financial Corporation, the Manager

         of Stout Street Fund I GP, LLC, the General Partner of Stout Street Fund I, LP,

         the plaintiff herein.  The facts recited herein are from my knowledge and from the

         mortgage loan documents in my custody and control and from the original lenders

         records transferred to me.

2.       The facts pertaining to the Note and Mortgage in this case are as follows:

         Note Dated:                    May 17, 2010

FILED  May 20 2013 Bronx Cou. / Clerk

| | |
|---|---|
| Mortgage Dated: | May 17, 2010 |
| Principal Loan Amount: | $178,800.00 |
| Borrower(s): | 18 MS Realty, Inc. |
| Lender: | Stout Street Funding, LLC |
| Mortgage Recording Date: | June 8, 2010 |
| CRFN Number: | 2010000190586 |
| Property Address: | 2117 Clinton Avenue, Bronx, New York 10457 (Block: 3096, Lot(s): 63) |
| County: | Bronx |

3.    Annexed and incorporated into this affidavit by reference is a copy of the executed and acknowledged Note (**Exhibit "A"**) and a copy of the recorded executed and acknowledged Mortgage (**Exhibit "B"**).

4.    On or about May 17, 2010, STOUT STREET FUNDING, LLC assigned its rights, title and interest in the Note, Mortgage and all related loan documents to STOUT STREET FUND I, LP, the plaintiff herein.  The assignment of mortgage to STOUT STREET FUND I, LP was recorded in records of the Clerk of the County of Bronx, City of New York on April 8, 2011 as CRFN 2011000127727. See **Exhibit "C"** annexed hereto for copy of the recorded Assignment of Mortgage and Allonge to Note.

5.    STOUT STREET FUND I, LP is the current owner and holder of the Mortgage, assignment of mortgage, Note, allonge to note, and all related loan documents.

6.    Due to borrower/mortgagor 18 MS Realty, Inc.'s default for nonpayment of the monthly mortgage payments commencing with the mortgage payment due on August 1, 2010, the mortgage debt was accelerated.

7. Due to borrower/mortgagor 18 MS Realty, Inc.'s default for nonpayment of the monthly mortgage payments commencing with the mortgage payment due on August 1, 2010, plaintiff commenced the instant foreclosure action.

8. No payments were made by borrower/mortgagor 18 MS Realty, Inc. and the mortgage debt remains in default.

9. Plaintiff respectfully requests an order of reference appointing a referee to compute the amount due plaintiff under the Note and Mortgage and amendment to the caption of the action in the form annexed hereto.

10. The above captioned action that is the subject of the underlying foreclosure proceeding **IS NOT** a "home loan" as defined by Section 1304 of the Real Property Actions and Proceedings Law, because, *inter alia*, the borrower is not a natural person and the subject premises is not an owner-occupied 1-4 family dwelling. Accordingly, a ninety (90) day notice to mortgagor prior to the commencement of the instant foreclosure action **IS NOT REQUIRED**.

11. The above captioned action that is the subject of the underlying foreclosure proceeding **IS NOT** real property consisting of an owner-occupied one-to-four-family dwelling as defined by section 1303 of the Real Property Actions and Proceedings Law. Accordingly, notice to the mortgagor with regard to information and assistance about the foreclosure process **IS NOT REQUIRED**.

12. **THIS ACTION IS EXEMPT FROM THE CONFERENCING REQUIREMENTS** of CPLR §3408 and the related provisions of Section 3-a of Chapter 472 of the Laws of 2008 as amended by Section 10 of Chapter 502 of the Laws of 2009 for the reason that the loan secured by the mortgage being

foreclosed herein is not a "home loan" as defined in said sections, because, *inter alia*, the borrower is not a natural person and the subject premises is not an owner-occupied 1-4 family dwelling.

13. **THIS ACTION IS EXEMPT FROM THE REQUIREMENTS SET FORTH IN THE ADMINISTRATIVE ORDER OF THE CHIEF ADMINISTRATIVE JUDGE OF THE COURTS, DATED OCTOBER 20, 2010, UNDER AO/548/10,** because the instant foreclosure action **IS NOT** a residential mortgage foreclosure involving one-to-four family homes and condominiums

David Kaplan
Sr. Vice President of Braddock Financial Corp.,
the Manager of Stout Street Fund I GP, LLC,
the General Partner of Stout Street Fund I, LP

**[ACKNOWLEDGEMENT PAGE FOLLOWS]**

FILED  May 20 2013 Bronx County Clerk

## ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

STATE OF _Colorado_ )
COUNTY OF _Denver_ ) ss.:

On the 27th day of _June_ in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared **David Kaplan** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the _City of Denver Colorado_ (insert city or political subdivision and the state of country or other place the acknowledgement was taken).

Notary Public

My commission expires: 10/11/2011

FILED  May 20 2013 Bronx Cou, ., Clerk

10.    The defendant 18 MS REALTY, INC. has failed to comply with the terms and provisions of the said mortgage and said instrument(s) secured by said mortgage, by failing and omitting to pay the following monthly payments each of which monthly payments became due on the 1st day of the following respective months, or on demand:

Months mortgage payments not paid: <u>August 1, 2010</u> and each month thereafter as set forth by the terms of Note and/or Mortgage.

11.    The default has continued beyond the applicable grace period set forth in the mortgage and note, and by reason thereof, plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal and all other chargeable items set forth in the note and mortgage.

12.    The required notice of default was sent by mortgagee to mortgagor on or about February 23, 2011 which notice conformed to the requirements set forth in paragraph 22 of the mortgage.

13.    Notwithstanding sending mortgagor / borrower the notice of default, mortgagor / borrower failed to cure its default. Said default continues through the date hereof and the date of acceleration of the mortgage being foreclosed herein.

14.    The following amounts are now due and owing on said mortgage and the said instrument secured by said mortgage, no part of any of which has been paid:

| | |
|---|---|
| ENTIRE PRINCIPAL BALANCE: | $178,800.00 |
| INTEREST THEREON FROM: | July 1, 2010 |
| DEFAULT INTEREST RATE: | **N/A** |
| LATE CHARGES: | $3,844.20 |
| PREPAYMENT PENALTY: | N/A |

Page 4

NEGATIVE ESCROW:                    N/A

15.    Each of the above-named defendant(s) has or claims to have or may claim to have some interest in or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to and is subject and subordinate to the lien of said mortgage.

16.    Defendant STATE OF NEW YORK is made a party defendant herein solely because it may have or claim to have a lien affecting the premises by reason of possible unpaid NYS franchise taxes.

17.    Defendant CITY OF NEW YORK is made a party defendant herein solely because it may have or claim to have a lien affecting the premises by reason of possible unpaid New York City General Business Taxes.

18.    The plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following:

      a.  Any state of facts that an inspection of the premises would disclose.

      b.  Any state of facts that an accurate survey of the premises would show.

      c.  Covenants, restrictions, easements and public utility agreements of record, if any.

      d.  Building and zoning ordinances of the municipality in which the mortgaged premises are located and possible violations of same.

      e.  Any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale.

      f.  Prior mortgage lien(s) of record, if any, and any advances and arrears thereunder.

      g.  Prior lien(s) of record, if any.

      h.  That the purchaser at said foreclosure sale pay all application City and State real property transfer taxes that are associated with the transfer of title by the Referee.

19.    In the event that plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior mortgage or otherwise, plaintiff requests that such other lien(s) shall not be merged in plaintiff's cause(s) of action set forth in this complaint but that plaintiff shall be permitted to enforce said other lien(s) and be paid said sums of the other liens from the proceeds of the foreclosure sale, and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

20.    The plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

21.    Defendant HUI JUN WANG personally guaranteed borrower's obligations set forth in the note, and is personally liable to plaintiff for any moneys that plaintiff fails to recover through the foreclosure sale of the premises.

22.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage or for the recovery of the said sum evidenced by the Note and secured by the Mortgage or any part thereof.

23.    The above captioned action that is the subject of the underlying foreclosure proceeding **IS NOT** a "home loan" as defined by Section 1304 of the Real Property Actions and Proceedings Law, because, *inter alia,* the borrower is not a natural person and the subject

premises is not an owner-occupied 1-4 family dwelling. Accordingly, a ninety (90) day notice to mortgagor prior to the commencement of the instant foreclosure action **IS NOT REQUIRED**.

24.    The above captioned action that is the subject of the underlying foreclosure proceeding **IS NOT** real property consisting of an owner-occupied one-to-four-family dwelling as defined by section 1303 of the Real Property Actions and Proceedings Law. Accordingly, notice to the mortgagor with regard to information and assistance about the foreclosure process **IS NOT REQUIRED**.

25.    **THIS ACTION IS EXEMPT FROM THE CONFERENCING REQUIREMENTS** of CPLR §3408 and the related provisions of Section 3-a of Chapter 472 of the Laws of 2008 as amended by Section 10 of Chapter 502 of the Laws of 2009 for the reason that the loan secured by the mortgage being foreclosed herein is not a "home loan" as defined in said sections, because, *inter alia*, the borrower is not a natural person and the subject premises is not an owner-occupied 1-4 family dwelling.

26.    **THIS ACTION IS EXEMPT FROM THE REQUIREMENTS SET FORTH IN THE ADMINISTRATIVE ORDER OF THE CHIEF ADMINISTRATIVE JUDGE OF THE COURTS, DATED OCTOBER 20, 2010, UNDER AO/548/10,** because the instant foreclosure action **IS NOT** a residential mortgage foreclosure involving one-to-four family homes and condominiums.

**WHEREFORE**, the plaintiff prays for judgment that the defendant(s) and each of them and all persons claiming under them or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the said mortgaged

premises and each and every part and parcel thereof; that the said premises may be decreed to be sold, according to law, in "as is" physical order and condition, subject to the items set forth in this complaint; that the monies arising from the sale thereof may be brought into Court; that the plaintiff may be paid the amount due on the note and mortgage as hereinbefore set forth, with the default rate provided in the mortgage contract and the prepayment penalty as provided for in the mortgage contract, and re-imbursement of the payment of expenses and disbursements of such sale, plus reasonable attorney's fees, together with the costs, allowances and disbursements of this action, and together with any sums incurred by plaintiff pursuant to any terms or provision of the note and mortgage set forth in this complaint, or to protect the lien of plaintiff's mortgage, together with interest upon said sums from the dates of the respective payments and advances thereof, so far as the amount of such monies properly applicable thereto will pay the same; that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties; and that the defendant(s) 18 MS REALTY, INC. and HUI JUN WANG may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds pursuant to the directions contained in such judgment, and that in the event that plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior mortgage or otherwise, that such other lien(s) shall not be merged in plaintiff's cause(s) of action set forth in this complaint and that plaintiff shall be permitted to enforce said other lien(s) and be paid said sums of the other liens from the proceeds of the foreclosure sale, and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus

FILED May 20 2013 Bronx County, Clerk

money proceedings, and that the plaintiff may have such other and further relief, as may be just
and equitable.

Dated:     April 5, 2011
              Great Neck, New York

Harry Zubli Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck NY 11021
Telephone: (516) 487-5777
Facsimile: (516) 487-4834

## VERIFICATION:

I, David Kaplan, being duly sworn, depose and say:

1.       I am the General Counsel for Braddock Financial Corporation, Manager of Stout Street Fund 1 GP LLC, the General Partner of Stout Street Fund I, LP, the plaintiff in the within action, and as such, am fully familiar with the facts and circumstances if this case.

2.       I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to my own knowledge except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.


                                                _____

                                               David Kaplan, Esq.


## [ACKNOWLEDGEMENT PAGE FOLLOWS]

**ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE**

STATE OF Colorado )
COUNTY OF Denver ) ss.:

On the 14th day of April in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared DAVID KAPLAN personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the city of Denver, Colorado (insert city or political subdivision and the state of country or other place the acknowledgement was taken).

Krista Toulc

Notary Public

My commission expires: 10/11/2011

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------------------X
STOUT STREET FUND I, LP

                                                            Plaintiffs,


           -against-


18 MS REALTY, INC.; HUI JUN WANG;
STATE OF NEW YORK ; CITY OF NEW
YORK;

"JOHN DOE 1-10" and "JANE DOE 1-10" said
names being fictitious parties intended being
possible  tenants,  occupants,  persons  or
corporations, if any, having an interest in or lien
upon the premises, described in the complaint.

                                                            Defendants.
------------------------------------------------------------------------X




## SUMMONS AND VERIFIED COMPLAINT




Harry Zubli, Esq.
Attorney for Plaintiff
1010 Northern Blvd., Suite 310
Great Neck, NY 11021
Tel: (516) 487-5777
Fax: (516) 487-4834